THE STATE INSURANCE COMPANY V. ABSALOM GRAY.

1. INSURANCE — *Negligence of Agent.* An agent authorized to take applications for insurance should be regarded to be acting within the scope of his authority where he fills up the blank application of insurance; and if, by his fault or negligence, it contains a misstatement not authorized by the instructions of the party who signed it, the wrong should be imputed to the company, and not to the assured.

2. AGENT *Writes False Answers — Estoppel.* When the agent thus authorized by his company to take applications for insurance, without the knowledge of the applicant, writes false answers to questions contained in the application, contrary to the directions of the applicant, who makes true answers to such questions, the company will be estopped by the answers thus written by its agent. (*Insurance Co. v. McLanathan,* 11 Kas. 533; *Insurance Co. v. Pearce,* 39 id. 396.)

*Error from Wilson District Court.*

ACTION to recover on a fire insurance policy. Judgment for plaintiff *Gray,* on November 3, 1887, for $488.62 and costs. The *Company* comes to this court. The opinion states the facts.

*Case & Glasse,* for plaintiff in error.

*J. W. Sutherland,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On August 9, 1886, J. W. Jones, the agent or solicitor of the State Insurance Company of Des Moines, residing in Neodesha, in this state, called upon Absalom Gray, at his residence near that city, and solicited insurance upon his house and household goods, and succeeded in taking his application for $850 of insurance upon his property. Gray, being unable to read or write, signed the application with his mark. On the 27th day of August, 1886, the insurance company issued to Gray a policy of insurance upon his property for the amount of his application. On the 17th day of February, 1887, the property insured was destroyed by fire without any fault of Gray. Subsequently, the in-

surance company refusing to pay any of the insurance upon the policy issued to him, he brought his action and recovered a judgment against the company for $488.62, together with all of his costs. The insurance company excepted to the rulings and judgment of the district court, and brings the case here. The application signed by Gray with his mark contained the following:

"It is understood by the assured that the company will not be bound by any representations of the assured or promises of the agent not contained herein. . . . The above statements shall be the sole basis of the contract between the said company and myself, and are hereby made a part of the same. Having read the foregoing application, and fully understanding its contents, I warrant it to contain a full and true description and statement of the condition, situation, value, occupancy, and title of the property hereby proposed to be insured in the State Insurance Company, of Des Moines; and I warrant the answers to each of the foregoing questions to be true, and I agree that this insurance shall not be binding upon the company until accepted by them."

This application was taken and forwarded to the company by its solicitor, J. W. Jones, whose authority was "to solicit applications for insurance in said company." Among other things, the policy contained this statement:

"It is expressly understood and agreed by the parties hereto that application and survey No. 243,392 C, made by the assured, is hereby made a part of this policy, and a warranty on the part of the assured, and that this policy is issued on the faith of the statement in said application and survey as they thus appear in writing therein only."

The premium on the policy was paid by a note, signed by the assured with his mark, which had not by its terms become due at the time of the fire. Before the maturity of the note it had been placed in bank for collection by the insurance company. Gray deposited in the bank the money to pay the same, but on account of the fire the company refused it and never accepted the same. Question 24, of the application, was as follows:

"Is the title to the land, on which the property to be in-

sured is situated, in your own name? What kind of title have you? Explain fully."

And the answer thereto, as the same appears in writing in the application, is: "The land is in my own name. I hold a warranty deed."

On the trial it was conceded that the title, instead of being in the name of Gray alone, was in the name of himself and his wife jointly. Question 25, of the application, was as follows:

"Is there any other insurance on this property; if so, how much, and in what company?"

And the answer thereto, as the same appears in writing in the application, is: "No."

On the trial it was conceded that at the time of taking the application there were two policies of insurance on the property, amounting to $500. Question 26, of the application, was as follows:

"Are you the sole and undisputed owner of the property to be insured?"

And the answer thereto, as the same appears in writing, is: "Yes."

Upon the trial, with consent of the parties, the court submitted certain questions of fact to the jury, but reserved the other questions for its own determination. The questions of fact submitted to the jury, and their answers, are as follows:

"1. When J. W. Jones asked question No. 25, in the application, 'Is there any other insurance on this property; if so, how much, and in what company?' who answered the question for the plaintiff? A. His wife.

"2. What was the actual answer made to the question? State the same fully. A. There was five hundred dollars in Springfield Company; did not know whether it was Springfield, Mo., or Ill.

"3. Did Jones write in said application the actual answer that was made to said question, or did he write an answer not made? A. He wrote an answer that was not made.

"4. After Jones had inserted the answers to the questions in the application as they now appear, did he read the same over to plaintiff or his wife, or to both? A. He did not.

"5. Question 24, in the application, is in these words: 'Is the title to the land on which the property to be insured is situated, in your own name? What kind of a title have you? Explain fully.' Did Jones read the question to the plaintiff or his wife, or both? A. He did not.

"6. Question No. 26, in the application, is in these words: 'Are you the sole and undisputed owner of the property to be insured?' Did Jones read the question to the plaintiff or his wife, or both? State what the fact is. A. He did not.

"7. Had the real estate on which the insured property was situated been purchased by the plaintiff with his own money? A. Yes.

"8. Had Mary Gray, the wife, any actual interest in the real estate exept such interest as she might have had by virtue of being the plaintiff's wife and her name appearing in the deed as one of the grantees? A. She did not."

The principal contention is, that the trial court committed error in admitting the evidence which showed that the statements written in the application were not those of Gray, the applicant, although signed by him with his mark; and in ruling that the insurance company was estopped by the answers falsely or improperly written by its agent or solicitor, when he filled up the blank application. Since this action was tried in the court below, the opinion of *Insurance Co. v. Pearce*, has been handed down by this court. (See 39 Kas. 396.) That case is so recent and so fully in point, that further discussion upon the principal question involved in this case is unnecessary. This court ruled in that case that—

"If, after hearing a full and truthful statement of the condition of the property insured from the owner, an agent of an insurance company fills the blanks in a printed form of application furnished him by the company with misrepresentations and false statements, and the insured signs the same without knowing its contents, and without other fault than that he relied upon the agent to write down his statement correctly, and pays the premium, obtains a policy and sustains a loss, *held*, that the company is estopped from denying its liability under the policy; and *further held*, that the signing of the application under such circumstances will not prevent a recovery by the insured, as the transcribing such statement

will be deemed to be the act of the company by its agent, and not that of the insured.

"Where an agent of an insurance company soliciting insurance, in describing the property insured, falsely, and without the knowledge of the insured, fills the blanks in the printed forms of application of the company, he is the agent of the company in taking such application and not of the insured, although there is a stipulation on the face of such application that the description of the property is made by the owner, or by his authority.

"Where it is provided in a policy that the statements in an application are warranties, and if any of them are false the policy shall be void, it is not forfeited when its own agent makes all the false statements contained in the application, and there was no fraud or attempt to deceive on the part of the assured."

See also *Insurance Co. v. McLanathan*, 11 Kas. 533; *Insurance Co. v. Mahone*, 21 Wall. 152; *Insurance Co. v. Wilkinson*, 13 id. 222; *Insurance Co. v. Baker*, 94 U. S. 610; *Pickel v. Insurance Co.*, 119 Ind. 291.

As both Mr. and Mrs. Gray were old, feeble, and illiterate, and as Gray, who signed the application and premium notes with his marks, and afterward retained in his possession the policy, could not read or write, the cases of *Furneaux v. Esterly*, 36 Kas. 539; *Johnson v. Insurance Co.*, 45 N. W. Rep. 799; and *Insurance Co. v. Fletcher*, 117 U. S. 519, have but little force. It ought not to be held that a person not able to read or write, by merely holding a policy in his possession which contains his application signed with his mark, thereby approves the action of the agent or solicitor in falsely or improperly taking his application, and becomes, by holding such policy, a participant in the fraud committed by the agent or solicitor.

As the evidence of Mrs. Gray tended to show that she was the agent of her husband, there was no error committed in admitting it. She may have been the agent of her husband and acting for him even when he was personally present. His age, feebleness and illiteracy must be considered in connection with her statement of agency.

The conversation between Gray and Jones, after Jones ceased to be the company's agent, was offered only to lay the foundation for impeachment; therefore this evidence was not incompetent. The insurance company is in no condition to complain of the failure of the jury to return a general verdict, and therefore the instructions prayed for, which would have been competent if it had been intended that the jury should render such a verdict, need not be considered. Before any evidence was submitted to the jury the parties agreed to submit certain questions of fact to the jury. The other questions were to be reserved and decided by the trial court. The court acted upon the stipulation of the parties, and no objection was taken by the defendant to the reception of the special verdict. By the agreement of its counsel and its action when the special verdict of the jury was returned, the defendant waived a general verdict.

The judgment of the district court will be affirmed.

All the Justices concurring.