## SECURITY INS. CO. OF NEW HAVEN, CONN., v. CAMERON et al.

No. 10465—Opinion Filed March 7, 1922.

(Syllabus.)

1. **Insurance — Authority of Agents — Negligence in Forwarding Application—Liability of Company.**

Agents representing insurance companies in soliciting insurance, can bind the company with regard to matters within the limited and restricted scope of their authority; that is to say, matters pertaining ·to the taking and preparation of applications for insurance for submission to the company; and an insurance company is chargeable with the negligence of such agent in failing for an unreasonable length of time to forward an application of insurance for acceptance or rejection to the company.

2. **Same—Legal Responsibilities of Companies—Prompt Action on Applications.**

Insurance companies are held, in law, to a broader legal responsibility than are parties to purely private contracts or transactions. This is based upon the fact that those companies act under franchise from the state, and the policy of the state in granting such franchises proceeds upon the theory that it is in the interest of the public to the end that indemnity upon specific contingencies should be provided those who are eligible and desire it, and for their protection the state regulates, inspects, and supervises their business. An insurance company having solicited and obtained applications for insurance and having received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon, or suffer the consequences flowing from their neglect so to do.

3. **Same—Solicitors Agents of Company, Not of Applicant.**

A soliciting agent of an insurance company, in all matters pertaining to the taking of applications for insurance, is the agent of the company, and not of the insured, and the acts, wrongs, and neglect of the agent are the acts, wrongs, and neglect of the company, and the insurance company cannot limit their responsibility for the acts of said agents and avoid the relation of principal by placing provisions in applications and contracts of insurance limiting their liability, responsibility, or disavowing said acts,

and this is so since all such provisions are declared void by statute. (See section 3462, Rev. Laws 1910.)

**4. Same—Negligent Delay of Agent in Forwarding Application—Liability of Company—Damages.**

An insurance company may be held liable in damages to an applicant for insurance where there has been unreasonable delay in perfecting and forwarding an application to the company for acceptance or rejection, by the soliciting agent of the company or other agent who has authority to supervise the solicitation and preparation of applications, and the question of the unreasonableness of the delay is one for the trier of the facts in each particular case under proper instruction of the court.

**5. Same—Fire Insurance—Negligent Delay —Loss by Fire—Damages.**

Under the facts in this case, where a soliciting agent procured an application for insurance from the applicants with a note covering the premium, the agent being duly authorized thereunto by the company, but failed to get the proper due date fixed in the note and failed to put in the note the amount required by the company for deferred payment of the premium, and immediately after delivery of said note and application the general agent discovered the mistakes in drawing the note and the soliciting agent notified the applicants and the applicants instructed the soliciting agent to make the required alterations in the note and the agents of the company retained said note and application without making further demands upon the applicants and failed to make the alterations in said note and application as directed, and failed to forward the same to the company at the place designated, and a loss was sustained by the applicants of their property sought to be insured, and there being no contention that there was not a reasonable time to have gotten the application to the company before the loss was sustained, nor reasonable time in which to inspect said risk, nor that said risk was one that the company would not insure, while this state of facts is not sufficient to constitute, in a technical sense, an express or implied contract of insurance, yet it is sufficient to constitute a breach of legal duty and actionable neglect, for which the company is liable to the applicant for whatever damage he reasonably suffered as the proximate result thereof, and the action of the trial court awarding damages upon such a state of facts will not be disturbed upon appeal.

Error from District Court, Grant County; W. M. Bowles, Judge.

Action by O. F. Cameron and another against the Security Insurance Company of New Haven, Conn., for damages for negligent delay in acting upon application for fire insurance. Judgment for plaintiffs, and defendant brings error. Affirmed.

H. O. Glasser and W. J. Otjen, for plaintiff in error.

Simons & McKnight, for defendants in error.

ELTING, J. This suit was commenced in the district court of Grant county, Okla., by O. F. Cameron and Lewis Rion, plaintiffs below, defendants in error herein, against the Security Insurance Company of New Haven, Conn., defendant below, plaintiff in error herein, by filing a petition on the 30th day of November, 1917. The defendants below entered their appearance by and through their attorney, George W. Buckner. In said petition the plaintiffs in error alleged, in substance, the following:

That at all the times referred to in said petition the defendant company was a corporation with its principal office and place of business at New Haven, Conn., and that said company maintained a western branch of its business with headquarters at Rockford, Ill., and that said company was a corporation engaged in the business of insuring property against fire and other hazards. That plaintiffs were residents of the state of Oklahoma. That on or about June 5, 1917, the plaintiffs were the owners of a separator, feeder, stacker, weigher, and main belt, which machinery was new and had just been purchased by plaintiffs. That at said time W. J. Otjen of Enid, Okla., was the general agent of defendant company in the state of Oklahoma, with office at the city of Enid, Garfield county, and that U. G. Parker of Wichita, Kan., was the duly authorized and acting agent of the defendant company for the purpose of soliciting and receiving applications for insurance for said company. That on the 5th day of June, 1917, U. G. Parker, soliciting agent, solicited these plaintiffs to insure the above described threshing machinery and equipment in the said company, and which machinery had just been purchased by the plaintiffs, but had not yet been delivered to them. That the plaintiffs at such time agreed with U. G. Parker, as such soliciting agent for said company, to insure said property with said company as soon as the property had been received, and in pursuance of said agreement the said U. G. Parker filled out a written and printed application addressed to said insurance company for insurance on the above described threshing machinery and which was to be signed by the plaintiffs when said property arrived. He also made out a note to cover the premium in the sum of $54. The plaintiffs were to sign said application and note upon the arrival of said machinery and send the same to U. G. Park-

er, who was to procure for plaintiffs the said insurance from said defendant company.

That on June 15, 1917, said machinery arrived, and as soon as unloaded the plaintiffs immediately signed both said application and note and mailed same to U. G. Parker at Enid, Okla., who received the same in due course of mail from Pond Creek, Okla., to Enid, Okla., and that thereupon U. G. Parker delivered said note and application to W. J. Otjen, general agent at Enid, Okla. That upon receiving said application and note the said W. J. Otjen notified the said Parker that the due date of said note should be changed from July 20th to July 15th; that the company required that said note should be payable not later than July 15th, and that the amount of said note, to wit, $54, was the amount of premium when the same was paid in cash and that the amount of said note should be increased by ten per cent. when said note was taken. That U. G. Parker notified the plaintiffs of this requirement and that they instructed U. G. Parker to make the alterations in the said note as required by said Otjen, and that U. G. Parker informed the said Otjen of his authority so received of the plaintiffs to change said note. That Otjen, instead of making the changes, or notifying the plaintiffs that he could not make said changes, did neither, and carelessly and negligently allowed said note and application to lay in his office without taking any action, either to change the note or notify the plaintiffs that said changes would not be made, until after June 30, 1917. That the plaintiffs relied upon said application made to said defendant company to procure insurance upon said property, and proceeded to use said property in the threshing of grain, subjecting the property to hazards against which the said insurance was desired. On June 30, 1917, all of said threshing property was destroyed except the belt by accidental fire and was a total loss. That said application called for insurance as follows: $460 on separator; $140 on feeder; $180 on stacker; and $75 on weigher; and $45 on the belt; or a total of $900, and that there was $855 insurance on the property that was destroyed. That W. J. Otjen and U. G. Parker had ample time to have made the necessary changes in the said note or to have procured a new note and application if necessary from the plaintiffs and the same forwarded to the office of the defendant company at Rockford, Ill., before said loss was sustained. That the carelessness and negligence of the said duly authorized agents in failing to attend to said

matter was attributable to the insurance company, and by reason of said neglect and carelessness the plaintiffs were damaged in the sum of $855, for which sum they prayed.

To the said petition a demurrer was filed, and the same was by the court overruled. Afterwards the plaintiffs amended their petition by attaching thereto a copy of their application for insurance. Defendant filed an answer which consisted of a general denial and three other allegations constituting defenses to said action. They admitted the agency of Otjen and U. G. Parker in the manner alleged in the plaintiffs' petition. They denied the authority of U. G. Parker or W. J. Otjen under their agency to change the amount or due date of said note, and alleged, furthermore, they had no authority to enter into any contracts binding said insurance company or to approve any applications for threshing machine insurance in behalf of said company; that their powers were limited, and that the general agent only had power to inspect and forward the application to the general office at Rockford, Ill., for the approval or rejection of the manager at that office, and in the event the general agent, W. J. Otjen, found the application and premium settlements correct in form and amount; and then alleged the following:

"Defendant further states that the application for thresher insurance in the defendant company made and signed by the plaintiffs in this action contains the following provisions, stipulations, and agreements, to wit:

"'This application is made subject to the approval of the company, at the office of the manager of its western department at Rockford, Ill., and is subject to the conditions hereof, and of the policy that may be issued thereon, and shall not be binding upon the company until this application has been received and approved by the manager of its western department at Rockford, Ill. It is agreed that the company shall not be bound by any representations of applicants or statements of the agent not contained herein. It is agreed that this application and the policy issued thereon shall be the sole basis of the contract between the said company and the insured, and I hereby agree to all the conditions contained herein, and to the conditions contained in the policy issued hereon.'

"And defendant states that by reason of the foregoing facts and the said provisions in said application, that this defendant is not liable to the plaintiffs in this action."

Then as their fourth defense allege the following:

"Further answering, defendant states that the policy issued by the defendant on the

kind of application made by the plaintiffs in this case contains the following provision, to wit:

" 'In consideration of this policy being issued for a term longer than the threshing season, it is expressly understood and agreed that the amount of insurance as stated in this policy shall be reduced 20 per cent. when the season's grain threshing is done, and that proportion thereof for the number of days the machinery has been used based on an average season's run of forty days, and the amount for which this company is liable thereunder shall not exceed the amount remaining after making said reduction.'

"And defendant states that under the theory of this case if the plaintiffs are entitled to recover, which is denied, that then and in that event the defendant is entitled to deduct the premium note of fifty-nine dollars and forty cents ($59.40) from the amount of damage sustained by plaintiffs, and also one-half (½) per cent. per day for the time the threshing machine of the plaintiffs was run, which was four days, and also for any amount of salvage, which amount in this case in money value, is to the defendant unknown."

The parties went to trial upon the following agreed statement of facts, omitting the caption:

"It is hereby stipulated and agreed by and between the plaintiffs and the defendant above named that this action shall be submitted to the court for determination upon an agreed statement of facts, which are as follows:

"That for the purpose of such submission that the allegations and statements of the plaintiffs' petition in this action shall be taken and considered as true in connection with the following and additional facts which are hereby agreed upon:

"It is agreed that in the event that judgment is rendered in favor of the plaintiffs in this action, that they are entitled to recover the sum of $855 for the amount of the property destroyed, less a credit and deduction thereon and therefrom of $59.40, which would have been the amount of the premium note for such insurance, and less a further deduction of two and one-half per cent. upon the sum of $795,00.

"It is further agreed that in connection with the matters and things set forth in the petition of the plaintiffs, that the following facts shall be taken as true and as evidence in said cause, to wit:

"That the note and application executed by the plaintiffs were executed on June 17th, and were delivered to W. J. Otjen by U. G. Parker on June 20, 1917.

"That W. J. Otjen was the general agent for the defendant company for the state of Oklahoma, but the said W. J. Otjen as such had no power or authority to make thresher contracts of insurance for and on behalf of the defendant company, or to approve applications for thresher insurance for said company or issue policies for thresher insurance for and on behalf of the defendant company, or to approve applications for thresher insurance for said company or issue policies for thresher insurance for and on behalf of said company, and the authority of said agent is limited to a general supervision over the soliciting agents in his territory and to inspect applications for thresher insurance and premium notes accompanying said applications in order to see that they are properly executed before forwarding them to defendant's branch office at Rockford, Ill., for approval or rejection; and to transmit such applications to said company. That neither W. J. Otjen nor U. G. Parker had power or authority to approve applications or issue policies for the defendant company.

"That on June 20, 1917, W. J. Otjen stated to the said U. G. Parker that the amount of the note was too small and should have been for $59.40, and that the date of payment of the note was too late to comply with the requirements of the Security Insurance Company in that the note was payable July 20th instead of July 15th; and W. J. Otjen suggested to the said U. G. Parker that he go and see the plaintiffs and have the note and application made to comply to the rules of the insurance company by changing the amount of the note to $59.40 and the due date of the note to July 15th; and W. J. Otjen informed the said U. G. Parker that he could not forward the note and application to the Rockford office of the company in its condition as presented because it did not comply with the defendant's rules.

"That the said U. G. Parker called upon one of the plaintiffs, O. F. Cameron, on June 20th, and said O. F. Cameron, acting for both plaintiffs, thereupon verbally instructed the said U. G. Parker to change the amount of the note to $59.40 and the date of the payment of the note to July 15, 1917.

"That thereupon U. G. Parker phoned to the office of W. J. Otjen and told his stenographer that O. F. Cameron, one of the * * * had instructed him to change the amount of the note to $59.40 and the date of payment to July 15, 1917. That said W. J. Otjen was absent from the office at the time and this information was conveyed to him by his stenographer on June 23, 1917. That W. J. Otjen took no further action thereon, but awaited the return of U. G. Parker or the plaintiffs and so held the application until June 30, 1917. That during said interval plaintiffs were out in the country threshing and U. G. Parker was absent from the city of Enid.

"When the machine of plaintiffs was destroyed by fire, thereupon, W. J. Otjen forwarded the application with a copy of the note to the Security Insurance Company at

Rockford, Ill., and with a recital of the circumstances and returned the note to plaintiffs under date of July 2, 1917, as per the letter attached to the petition of plaintiffs and marked 'Exhibit A.'

"It is further agreed that the printed instructions of the Security Insurance Company to their agents as set out in their rules and instructions to agents cards covering this kind of insurance provides as follows:

" 'Where notes are taken they must be made to mature not later than July 15th.'

"It is further agreed that the correct amount of the premium note on the application of plaintiffs so called for by the rate of defendant would have been $59.40 instead of $54.00, but that the above provisions and directions to the agents of the defendant were not known to the plaintiffs or brought to their attention.

"That a true and correct copy of the application given in this case by the plaintiffs and the note given by the plaintiffs in this case is hereto attached and made a part hereof.

"Witness our hands this August 9, 1918.

"P. C. Simons,
"Attorney for Plaintiffs.
"James W. Steen,
"Attorney for Defendant."

Whereupon the court, after hearing the argument of the attorneys, rendered judgment in favor of the plaintiffs in the sum of $775, and the defendant company filed motion for a new trial, same was overruled, and this cause, after notice in open court, appealed to this court.

The question involved in this appeal arises from the opposite contentions of the plaintiff in error and the defendants in error in this wise: The defendants in error contend that they are entitled to recover from the plaintiff in error insurance company by reason of the failure of the agents, U. G. Parker, the soliciting agent, and W. J. Otjen, the general agent, to procure the insurance on their machinery for loss by fire, due to the neglect and unreasonable delay of said agents in forwarding said application and note to the western branch at Rockford, Ill., and that this neglect of the agents is attributable to the company, and that the company, therefore, is liable to the defendants in error for damage by breach of legal duty to promptly secure them a contract of insurance.

The plaintiff in error contends, in opposition to the position of the defendants in error, that, U. G. Parker being merely a soliciting agent and W. J. Otjen being an agent with general supervision over soliciting agents in his territory and with power to inspect applications for insurance and premium notes coming from said application in order to see that they are properly executed before forwarding them to defendants' branch office at Rockford, Ill., for approval or rejection, neither of said agents had the power or authority to approve applications or issue policies for defendant company; hence, their negligent acts, if any, not coming within the scope of the agent's authority, could not be attributable to the insurance company.

The further contention of the insurance company was that the plaintiffs below, defendants in error herein, could not recover for the further reason that no contract of insurance had been consummated, and that there could be no binding contract of insurance upon the company until the application had been received and approved by the manager of the western department at Rockford, Ill. The insurance company further contends that the application for thresher insurance is binding upon the plaintiffs below, defendants in error herein, and the provision in said application which provides that the company shall not be bound by any representations of applicants or statements of the agent not contained therein; and that the application and the policy issued thereon should be the sole basis of the contract between the company and the insured, and to which provisions the insured had specifically agreed in said application.

This question, raising as it does a consideration of how far and under what circumstances insurance companies are to be bound by the conduct and acts of their agents whose authority is not general in that they have not the power to bind the company finally to an insurance contract, has not been specifically passed upon, as far as we are able to determine, in this state and as applied to a state of facts such as prevail in the instant case.

The action of the plaintiffs below, defendants in error herein, is an action sounding in tort, claiming damage for breach of legal duty that the insurance company owed to the insured in this case. We will in the balance of this opinion refer to the insurance company as the insurer and the defendants in error as the insured.

Hence, the question of the existence of a contract of insurance is not involved in this case. It does not require an analysis of the elements of a contract and a consideration as to whether the facts in this case warrant the holding that a legal contract was consummated either specifically and in writing or by implication or estoppel. The sole

question is and the main element thereof being, first, whether the conduct of the agents of the insurance company is attributable to the insurance company; and, second, if so attributable, whether it is sufficient under the admitted facts to sustain the verdict of a jury or the judgment of a court acting in lieu of a jury holding the insurance company liable to the insured for damages for neglect and breach of legal duty.

Upon the questions involved in this case, there seem to be two lines of decisions. In the case of Pfiester v. Missouri State Life Ins. Co. (Kan.) 116 Pac. 245, we quote the following from page 247:

"The contention of the defendant is that the evidence of the plaintiff relating to the date upon which premiums were to become due was incompetent, because it tended to contradict the written contract. The first purpose which the plaintiff sought to accomplish was the reformation of the contract. Insurance contracts are the subject of reformation the same as any other kind, and in all suits for reformation the true contract may be established by parol evidence, whenever it is the result of oral negotiations. These principles are elementary. The defendant argues further, however, that, since its agent's authority was limited to the taking and transmittal of applications, he could not make a binding contract that premiums should fall due on June 14th; that no application requesting that premiums fall due on that date was ever submitted to or approved by the defendant, and consequently that the judgment of the court in effect makes a contract, instead of reforms one.

"There are two principal lines of decisions on the subject indicated, with a third inclining now toward one and now toward the other. According to one view, the applicant and the insurer are treated as if the negotiations were of ordinary bargain and sale, in a field where both stand on the same footing. The applicant frames and signs, upon his own judgment and at his own risk, an order or request for an article called a policy. This order is taken and transmitted by an intermediary commissioned, equipped, and paid by the insurer, but the insurer may by force of mere words destroy the relation of agency between itself and the intermediary, and cast all the consequences of his mistakes and misfeasances upon the applicant. Upon receipt of the order, the insurer fills it by forwarding an elaborate and intricate document, which the applicant takes according to the rule of caveat emptor. If the terms of the policy do not correspond to the application, a new proposition is tendered, which the applicant must detect, scrutinize, and reject, or forever hold his peace. At every step the applicant is held rigorously to the maxim 'vigilantibus et non

dormientibus jura subveniunt.' Meanwhile the insurer has the applicant's money.

"The other principal theory of the formation of the insurance contract is based upon facts. Everybody knows what the facts are. The insurance company sends out its agents for the purpose of procuring insurance. They are usually experts in the business, and are frequently paid large bonuses for securing extra large volumes of insurance. Few persons solicited to take policies understand the subject of insurance or the rules of law governing the negotiations, and they have no voice in dictating the terms of what is called the contract. They are clear upon two or three points which the agent promises to protect, and for everything else they must sign ready-made policies carefully concocted to conserve the interests of the company. The agent in fact prepares the contract when he writes the application, because the policy, which the applicant does not see until delivered and does not sign, follows the acceptance of the application as a matter of course. In writing the application, the agent does what the company sent him out to do. He negotiates for the company, asks questions for the company, writes down answers for the company, and makes the return for the company. It is not carelessness or imprudence in fact, as people in general understand those terms, for the applicant to take it for granted that the agent will accurately and truthfully set down the result of the negotiations. If he fails to do so, good sense and common justice regard the company as responsible, and not the insured. The subject, therefore, is sui generis, and the rules of a legal system devised to govern the formation of ordinary contracts between man and man cannot be mechanically applied to it. It is not necessary to review the decisions in which the foregoing conflicting views are maintained. This court favors the one which is least artificial and best conforms to the facts."

In this cited and quoted opinion. Burch, J., then cites and quotes from a number of Kansas cases which in effect hold that the company is bound by the acts of its agents and is responsible for their mistakes or fraud committed during the preliminary negotiations. This being a case of first impression in this state and of great importance, we will give the quoted portions of the Kansas cases and the discussions in the cited case:

"In the case of Continental Ins. Co. v. Pearce, 39 Kan. 396, 18 Pac. 291, 7 Am. St. Rep. 557, the opinion reads: 'In taking this application for insurance, was J. A. Beals the agent of the plaintiff or of defendant? It is claimed that by reason of the stipulation on its face, which provided that all statements, answers, and descriptions were the acts of the plaintiff, that whatever part Beals may have taken in making and fill-

ing it out was as his agent. It must be conceded that plaintiff did not seek Beals for this work; did not even ask him to do it, and paid him nothing therefor; did not ever suspect that at that time he was his agent, but did believe that he was an insurance agent, looking after the interests of the company whose advantages he was advocating to plaintiff. He was canvassing for business for the defendant; had made several trips to plaintiff's house, before he saw him, to insure it, and, against plaintiff's preference, finally induced him to insure in this company. He was supplied with its blanks and was employed and paid by it. This application was practically the work of Beals, though the stipulation on the face thereof provides that the answers and statements were made by plaintiff, or his authority, thus attempting to make the agent of the company the agent of the insured. The ordinary instructions of companies to their agents, and their dealings with them, are too well known for us to shut our eyes to the manner in which their work is carried on. This is but a form of words to attempt to create on paper an agency, which in fact never existed. It is an attempt of the company, not to restrict the powers of its own agent, but an effort to do away with that relation altogether by mere words, and to make him in the same manner the agent of the assured, when in fact such relation never existed. Insurance Co. v. Myers, 55 Miss. 479 (30 Am. Rep. 521.) We do not believe the entire nature and order of this well-established relation can be completely subverted by this ingenious device of words. The real fact as it existed, cannot be hidden in this manner; much less can it be destroyed and something that did not in reality exist be placed in its stead. The substance is superior to the mere drapery of words with which one party wishes to bring into existence and clothe an unreal authority.' 39 Kan. at page 401, 18 Pac. at page 294 (7 Am. St. Rep. 557.)

"In the case of Sullivan v. Phenix Ins. Co., 34 Kan. 170, 8 Pac. 112, it was held that an insurance company cannot shirk responsibility for any mistake or fraud committed by its agent during the preliminary negotiations on its behalf by stipulating that he is the agent of the insured. Such a stipulation involves a legal contradiction and is invalid.

"In the case of Insurance Co. v. Gray, 44 Kan. 731, 25 Pac. 197, the first paragraph of the syllabus reads as follows: 'An agent authorized to take applications for insurance should be regarded to be acting within the scope of his authority where he fills up the blank application of insurance; and, if, by his fault or negligence, it contains a misstatement not authorized by the instructions of the party who signed it, the wrong should be imputed to the company, and not to the assured.'

"In the case of Insurance Co. v. Davis, 59 Kan. 521, 526, 53 Pac. 856, 85S, the opinion reads: 'There was proof to the effect that the agent of the company who filled out the application for the policy was informed by Davis that he already held an accident policy in the Traveler's Insurance Company, but for some reason that fact was omitted from the application. It is well settled that, where the agent of an insurance company who fills out an application for insurance is duly informed as to facts and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company.'

"In the case of Insurance Co. v. Bank, 60 Kan. 630, 637, 57 Pac. 524, 526, the opinion reads: 'In the case at bar the agent was bound to write the answers in the application as dictated by the insured, and the latter was not called upon to assume that a fraud was being practiced upon him, nor can he be charged with negligence in believing that the agent was acting in good faith. Although Rammelsberg might have received from the the insurance company the policy with the written application attached thereto, yet he had a right to assume that the answers made by him were correctly written, and cannot be chargeable with negligence for his failure to be suspicious, or for too much confidence in the good faith of the agent in carrying out his directions.'

"In the case of Insurance Co. v. Darrin, 80 Kan. 578, 103 Pac. 87, it was held that the insured has the right to assume that the policy he receives is prepared in accordance with his application; that it is the duty of the insurer so to prepare it; and that the fact that the insured does not read the policy until after a loss has occurred will not defeat recovery.

"The attitude of this court toward the subject under consideration is further disclosed in numerous other decisions of like character."

"In this case the agent had the authority to negotiate, write and transmit the application. For these purposes he had all the power the company itself possessed, and agreements made with him as to what the terms of the application should be were made with the company. It was the agent's duty to frame the application according to the agreement with the plaintiff, and his neglect to do so was the neglect of the company. His knowledge of the agreement was the knowledge of his principal, and consequently for all purposes of the law the defendant knew the true terms of the application. With such knowledge it accepted and approved the application, received and retained the first year's premium, and issued the policy. This made a binding contract of insurance, incorrectly evidenced, however, through the defendant's fault. True, on the face of the policy, and under the provision of the application quoted above relating to the force of statements not in writing, the defendant did not appear to be liable. But the defendant cannot take

advantage of its own wrong and successfully oppose the right of the plaintiff to have the agreement relating to the date when the annual premium should fall due written into the application, and to have the policy reformed acordingly. On the policy reformed to state truthfully the contract actually made, the defendant is liable.

"If the insured, or the plaintiff, had discovered the omission from the application and the error in the policy, it would have been his duty to call them to the attention of the company, and have the necessary corrections made. Delay would have indicated acquiescence, and if sufficiently prolonged might have affected the right to the equitable remedy of reformation. But there is no evidence that the mistakes were discovered until the policy had matured by the death of the insured. Meanwhile the plaintiff and the insured were not negligent in failing to examine the application or the policy, and were justified in supposing that they had been written as contemplated."

The cited case from Kansas was an action to reform the policy in accordance with an agreement as contended by the beneficiary and to recover upon the policy as reformed; the controversy being over whether the date written in the policy maturing the premium expressed the agreement between the insured and the agent. The policy fixed May 4th, while the beneficiary contended that the agreement was June 14th. The court below reformed the policy and entered judgment against the company, and the following statement is made in the cited opinion:

"There was evidence to the effect that the agent made no agreement fixing June 14th as the date when premiums should fall due, but the district court has resolved the question of fact in favor of the plaintiff upon the evidence quoted above, which the court regards as sufficient."

The opinion in the case of Boyer v. State Farmers' Mutual Hail Ins. Co., 86 Kan 442, 121 Pac. 329, 40 L. R. A. (N.S.) 164, was written by Burch, J., who wrote the opinion in the case of Pfiester v. Missouri State Life Ins. Co., heretofore cited and quoted. The last cited case pertained to a hail insurance policy, and the situation is almost identical with the case at bar. It appears that the policy in this case was issued the day after the growing crop was destroyed by a hail storm, and the insured sought to recover damages the same as in the instant case for unreasonable delay and neglect on the part of the soliciting agent in forwarding the application. The company appears to have defended upon the same ground as in the instant case, and the further ground that the soliciting agent had taken a note for the premium, when the practice of the company was to require the premium to be paid in cash. We are giving quite an extended quotation from this opinion by reason of its importance. The syllabus of the case reads as follows:

"Under the facts of this case, it is held that a hail insurance company which issued a policy on a crop of growing corn the day after it was destroyed by a hailstorm is liable in damages for the amount of the insurance which would have been in force before the storm had its soliciting agent not delayed for an unreasonable length of time to forward the application on which the policy was issued."

The following is taken from the body of said opinion, pages 166-168:

"The greater part of the brief for the defendant is devoted to arguments which relate to the agent's lack of authority, under the restrictions placed upon him, to effect a contract of insurance, and to the necessity for an acceptance of the application as a condition precedent to the formation of a contract of insurance. Many authorities are cited upon these subjects, including those decisions which hold that unreasonable delay in acting upon an application does not constitute acceptance and does not warrant a presumption of acceptance. The course of the inquiry in this case lies in a different direction. This is not a suit on a contract of insurance, and the judgment does not rest upon the breach of such a contract. The position of the plaintiff and the district court is that under the peculiar conditions surrounding the transaction, the agent should have forwarded the plaintiff's application promptly for acceptance or rejection; that the application would have been accepted if he had done so, and a contract of insurance would have been consummated, protecting the plaintiff from the loss which occurred; that the negligence of the agent in not forwarding the application until it was too late for the acceptance of it to be of any benefit to the plaintiff was the negligence of the company; and consequently that the company wrongfully deprived the plaintiff of the indemnity he should have had, to his injury.

"For all purposes of taking and forwarding the application the agent was the company itself. He could negotiate an application for insurance, based upon cash, upon the applicant's note or upon any other terms, precisely as the board of directors of the company might have done. The option exercised by the agent to take a note, instead of cash, which he might have received (finding No. 5), was an option exercised by his principal. He could have dispensed with the bank check or draft (finding No. 4), as an essential feature of the application, and whatever the arrangements with the applicant might be it was the agent's

duty to present it for acceptance or rejection to the officer or officers holding the reserved power to determine whether the policy should be issued. The agency relation of insurance solicitors to the insurer and the person solicited, and the authority of such agents over the subject of the application are fully discussed in the case of Pfiester v. Missouri State Life Ins. Co., 85 Kan. 97. 116 Pac. 245, and the rules of the law there stated are applicable here.

"When the application was solicited by the agent, the danger period of the corn-growing season had been reached and early action, whereby the risk of injury might be shifted to the defendant, was a matter of much consequence to the plaintiff. The application was given for the purpose of transmission to the defendant's headquarters, and not that it might be retained by the agent and carried about in his pocket. The defendant itself recognized the necessity of expeditiousness in a letter of instruction to the agent which was introduced in evidence, and which, no doubt, was regarded by the court as quite material, when considering the matters covered by finding No. 12. A portion of the letter reads as follows:

"Special Notice—Send all applications promptly, because there is no liability of the company until the application is received and approved by us.' It is fair to presume that likelihood of the destruction of the plaintiff's corn by hail induced the very high rate of premium demanded for the brief term of the insurance, in this case six per cent. On one thousand dollars, or 5 per cent. of the full value of the crop at the time of negotiations. There was sufficient danger to the plaintiff to be apprehended from delay in closing the transaction that a reasonably prudent business man, guided by the considerations which ordinarily regulate conduct, would have acted with diligence If the agent only be considered, it is clear enough that he would be liable if his negligent retention of the application prevented its timely acceptance. Since he was merely the arm of the defendant, the obligation resting upon him was the obligation of the defendant. Therefore, the duty of the defendant to secure prompt transmission of the application from the solicitor's field to the central office is quite apparent. Whether or not the delay in this case was unreasonable, was a question of fact for the trier of the facts, and, as it is presented here, is not one of law for this court.

"It is claimed that the finding that a policy would have been issued before the corn was destroyed, had the application been forwarded promptly, is not sustained by the evidence. The finding is sufficiently sustained by the proof that the application was immediately approved upon its arrival at the defendant's office, and a policy was issued accordingly, taking effect at noon of the same day. The position of the defendant was that its hailstorm business was conducted on a cash basis only, and its witnesses supported this position by some interesting testimony. They stated that premiums must be paid in cash; that promissory notes were never accepted; that defendant was not interested in plaintiff's note, and did not know what became of it; and that the defendant was only interested in a cash settlement for the policy,—all in face of the proofs that three policies at least (finding No. 10) were issued on July 12th without cash and without hesitation or objection."

The following is taken from the notes of the editor in 40 L. R. A. (N. S.) 165:

"But whatever the decision of the jury may be on this question, it cannot be doubted that the proposition that an insurer should be held liable for a loss sustained by an applicant for insurance because of the negligence of the insurer's agents in failing to forward the application within a reasonable time is sound."

The various cases in support and in opposition to the holding laid down in two Kansas cases are given in the extensive note to the case of Michigan Pipe Line Co. v. Michigan Fire & Marine Ins. Co. (Mich.) 20 L. R. A. 277.

The case of Duffy v. Bankers Life Association of Des Moines is an Iowa case and found in 46 L. R. A. (N. S.) 25. This is a well-reasoned case and bears out the holdings in the Kansas cases. The first paragraph of the syllabus reads as follows:

"An insurance company is chargeable with the neglect of its agent in failing for an unreasonable time to forward an application and medical report for acceptance or rejection."

We take the following from the body of the opinion, pages 29, 30:

"But it is said that a certificate or policy of insurance is simply a contract like any other, as between individuals, and that there is no such thing as negligence of a party in the matter of delay in entering into a contract. This view overlooks the fact that the defendant holds and is acting under a franchise from the state. The legislative policy in granting this, proceeds on the theory that chartering such association is in the interest of the public, to the end that indemnity on specific contingencies shall be provided those who are eligible and desire it, and for their protection the state regulates, inspects, and supervises their business. Having solicited applications for insurance, and having so obtained them and received payment of the fees or premiums exacted. they are bound either to furnish the indemnity the state has author-

ized them to furnish or decline so to do, within such reasonable time as will enable them to act intelligently and advisedly thereon, or suffer the consequences flowing from their neglect so to do. Otherwise the applicant is unduly delayed in obtaining the insurance he desires, and for which the law has afforded the opportunity, and which the insurer impliedly has promised, if conditions are satisfactory."

The case of Johnson v. Farmers' Ins. Co. (Iowa) 168 N. W. 264, is another case strongly upholding the views expressed in the Kansas cases. In this last cited case it appears that the objection of insurance companies to paying the policy was that there was no written application signed by the insured, and which the insured claims was waived by the soliciting agent. The contention of the insured was upheld. From the body of the opinion, we take the following:

"Defendant also pleads and argues that the form of policy which would have been issued to plaintiff had her insurance been perfected contained a provision barring action thereon if suit be not begun within one year after her loss; that her right to bring this action for damages because of the agent's negligence is subject to the same limitation; and, as this action was not begun within one year, her right to maintain the same is barred. As sustaining this proposition special reliance is placed upon Barre v. Ins. Co., 76 Iowa, 609, 41 N. W. 373, and Green v. Ins. Co., 91 Iowa, 615, 60 N. W. 189, which decisions in turn cite and apply the rule followed in Smith v. Ins. Co., 64 Iowa, 716, 21 N. W. 145, and Hubbard v. Ins. Co., 33 Iowa, 325, 11 Am. Rep. 125. In each and all of these precedents action was brought to recover indemnity upon an alleged oral contract of insurance, except perhaps in the Barre Case, where the petition declared upon an oral contract to issue a policy, but in none was there any suggestion of a claim to recover damages for negligence. * * * All this may be correct, but it does not follow that, because an action upon the policy, had one been issued, or upon an oral agreement of insurance, would have been barred, the same limitation must be applied to an action to recover damages for the neglect of appellant's agent to effect a contract of insurance either written or oral. The parties are in accord upon the proposition that there was no contract of insurance. Plaintiff's claim is that the defendant's agent, acting within the apparent scope of his authority, undertook to obtain such a contract and provide her with insurance, but negligently failed to do so, and she demands recovery, not because she was insured, but because she was not insured, and because her want of protection in this respect is due to the neglect of the defendant's agent. Generally speaking, an action to re-

cover damages on account of negligence may be brought at any time within the statutory period of two years (Code, sec. 3447) ; and, in the absence of any showing bringing the case within any of the exceptions to that provision, it is not within the province of the court to abbreviate the period so fixed."

In the last cited case they lay down the rule of damages in actions based on negligence for failure to issue insurance policies in the last paragraph of the syllabus in the following language:

"In an action against an insurance company for negligence of agent in failing to send application to company, applicant can recover as damages only amount of actual loss, and not amount of policy."

The rule of damages is unnecessary to be considered, however, in this case, for the reason that in the stipulation it is agreed, in the event the plaintiffs recover, what the amount of their recovery should be.

It is contended by the insurer in this case that they cannot be held liable in any way unless there was a binding contract of insurance, and that under the stipulation provided in the application, signed by the insured in the instant case, the terms of the contract were not to be binding until the application was received and approved by the manager of the home office. It does not provide, however, that the company is not to be bound until the policy of insurance is properly executed and delivered. It strikes us as manifestly unfair to hold a stipulation in an application for insurance that the company is not bound until the application is received and approved, as warranting an insurance company to delay consummating a contract of insurance for an unreasonable length of time, and then, in the event of loss, repudiate it. It is in just such situations as this that the insured is allowed, in the event of loss, to recover damages for negligence based upon unreasonable delay. The doctrine is laid down in paragraph 46, pages 54 and 55, 26 C. J., and reads of follows:

"Acceptance of the application in some form being essential to the validity of the contract, mere delay in acceptance of an application made, or failure to notify insured of the rejection of his application, will not as a general rule constitute a contract of insurance. So the fact that the agent receiving the application and the accompanying premium does not return them within a reasonable time to insured will not in itself give rise to a contract on the part of insurer. It has been held, however, in an action against an insurance company for damages because of the negligence of

its agent in not forwarding an application, that after receiving the premium and without notifying the applicant of a refusal to insure, or offering to return the premium, neither the company nor its agent could escape merely because the applicant did not demand action on their part before a loss occurred. But where the application stipulates that there shall be no contract of insurance until the company approves such application and evidences its approval by the issuance and delivery of a policy, no cause of action for negligence can be based on the delay of the agent in transmitting the application to the company. The question is, in reality, whether it is the mutual understanding of the parties that the insurance shall not become binding until acceptance, or on the other hand, that it shall become binding unless it is rejected. If the insurance company has simply reserved the right to reject applications, unreasonable delay in formally accepting, or failure to notify the insured within a reasonable time of the rejection, will amount to an acceptance rendering the company liable."

The case of Commercial Union Assurance Co. v. State ex rel. Smith et al. (Ind.) 15 N. E. 518, states the following upon this question:

"We have no doubt that the counsel for the appellant are right in affirming that it is essential to the contract of insurance that there should be a meeting of the minds of the contracting parties upon all the elements of the contract. This is but the application of a rudimental principle to a particular instance. But we cannot assent to counsel's proposition that, in this instance, there was no meeting of minds. If Nixon was agent of the corporation, then his acts were the acts of the corporation. Of this there can be no doubt, for an agent, invested with authority to act for his principal, acts as a principal in exercising that authority. If Nixon agreed to the contract as the appellant's authorized agent, then, in legal contemplation, the appellant agreed to it. That Nixon was the agent of the company we have already shown, and that he did agree to the terms of the contract, and in the fullest extent, is very clear. We conclude upon this point that here was a meeting of minds, and that the parol contract was complete in all its parts.

"It is probably true that the appellant might rightfully have repudiated the contract made by its agent. If, however, this be granted, it will not here avail the appellant. To make such a right available, the insurer must, in such a case as this, notify the assured of the cancellation of the contract. It is not enough for an insurance company to notify its own agent. Notice to its agent is notice to itself; this it is and nothing more. Manifestly such a notice is futile. If the company trusts its agent, it must suffer, not the assured. It selected its agent, placed confidence in him, and

held him out as worthy of that confidence; and after it discovered his misconduct it ought to have notified the assured, who, as its officer knew, had relied upon his conduct. A brief recapitulation of the facts will make it clear that equity requires this conclusion. That on the 24th day of July, the parol contract was made; on that day it was entered on the company's record; a report of the contract and its terms was forwarded to the chief officers at Cincinnati; and that report showed that the risk began on the 24th day of July. On the 25th the officers at Cincinnati wrote the company's agent to cancel the risk, or obtain a higher rate. They, at that time, therefore, recognized his authority to make the contract, and, without denying the contract, directed the cancellation or an increase in the premium. To this letter the agent made no reply. On the 10th day of August they again wrote, but they received no answer. Again they wrote, and that letter, like its predecessors, passed unanswered. A few days after the last letter was written (August 22, 1885), the company sent a special agent to Newcastle to examine the affairs of the agency at that place. He discharged Nixon, took from his possession the policy made out for the relators, and returned it to the office at Cincinnati for cancellation. No notice was at any time given the assured of the action taken by the company, or of the agent's disobedience of instructions. With knowledge of all of these material facts, the officers of the **company remained silent. Not a word** of warning was given the assured. On the plainest principle of justice the company was bound to give the assured notice of the repudiation of the contract. Facts were before its officers which clearly informed them what the agent had done, and from which the natural inference was that the assured, reposing confidence in the acts of the agent, were resting in security, believing that the property in their charge was insured. Having the means of knowledge is equivalent to knowledge, and therefore the company did have knowledge. With this knowledge its conduct can neither be justified nor excused. The wrong admits of no defense, and of it the company cannot take advantage. Where an insurance company, which has knowledge that its agent had made a contract of insurance, and has facts before it apprising it that the assured rests on the contract, it cannot cancel the contract without notice to the assured. This conclusion stands on solid principle and is sustained by authority. Distilling Company v. Insurance Co., 13 Fed. Rep. 74; Runkle v. Insurance Co., 6 Fed. Rep. 148. Any other rule would place it in the power of an insurance company to wrong an assured whose only error was that he trusted a chosen agent of the company. Any other rule would place it in the power of an insurance company to take the chances of a loss, and, if none occur, retain the premium; but if one does occur,

repudiate the contract and compel the assured to bear the loss. No rule which would permit these consequences can have our sanction. Nor does the rule we assert require much of the company. It simply requires it to do what in common fairness and good conscience it ought to do,—notify the assured. An insurer that is unwilling to do this much deserves no favor in a court of justice. This much is required in commercial transactions, for through all the law of agency runs the doctrine that a principal who is fully informed of his agent's act must promptly disavow it or else answer for it. This disavowel, any one can see, is of no effect unless communicated to the party who trusted the agent."

It appears that the rule is that insurance companies issuing policies only upon the application being received and approved cannot act in an unreasonable and unfair way. At least this seems to be the rule that is applied in the event a loss intervenes before a specified approval, and such seems to be the rule laid down in the case of Palm, Administrator of Fredrick Bollmeyer, v. Medina County Ins. Co., 20 Ohio, star page 529. The presumption is that the policy will be approved and issued. The presumption is that the company wants business. It is not permitted to hold the premium unless it issues the policy, and hence the insurance company should not be permitted to take advantage of unreasonable delays in issuing them. The following is taken from Continental Ins. Co. v. Haines, 10 Ky. 276:

"It is to be assumed that the company will accept the risk if advantageous to it, which must be, if fairly and honestly contracted for, because that is the business in which it is engaged, and that is the object for which its agent acted, and therefore to allow it, under reservation of the right to approve, to reject simply because a loss has occurred, would destroy the mutuality of the contract and inflict upon one party the misfortune he had provided against."

The same doctrine is approved in the case of Duffy v. Bankers' Life Association, heretofore cited. Also the doctrine is approved in Northwest Mutual Life Ins. Co. v. Neafus (Ky.) 36 L. R. A. (N. S.) 1211.

We think the following propositions are clearly deducible from the authorities that we have cited and quoted: That the applicant for an insurance policy has a right to rely upon the representations and conduct of solicitors of insurance for insurance companies in the taking of contracts and applications for insurance; and that the companies are bound by the acts of said agents within the scope of such agency; and that where the applicant fails to procure a contract of insurance and sustains a loss, against which loss the insurance sought was to indemnify him, and where such failure and loss is due to the unreasonable delay and neglect of the soliciting agent, or other agent of such company, such neglect and fault may be attributed to the company, and the insurance company becomes responsible to the applicant for whatever damage is the proximate and natural result of such neglect.

The reasonableness or unreasonableness of such delay and the amount of damage resulting therefrom is a question to be determined by the triers of the facts. It is deducible from the principles laid down that as a defense the insurer may plead that the risk against which they insured was such that they could not be held to have reasonably contemplated its acceptance. In other words, they would have a right to show that the risk was unreasonable and not contemplated when accepting said application and one that they would not have accepted.

In the state of Oklahoma, as heretofore stated, the rule we have been discussing, whereby it is held that insurance companies are bound by the acts of their agents and cannot avoid the responsibility of the acts of their agents by disavowing them in applications for insurance, seems to be a proposition upon which this court is not as yet clearly committed. But there are opinions that indicate a strong leaning in that direction. In the case of Phoenix Fire Ins. Co. v. Ceaphus, 29 Okla. 608, 119 Pac. 583, the Supreme Court of this state refused to hold an insurance company bound by the knowledge of its agent acquired at the time of the taking of the policy, or that the agent could waive for the company. But this contract of insurance arose in the Indian Territory side of the state before statehood and the policy would be interpreted and controlled by holdings of the United States courts as laid down and interpreted by the Supreme Court, and the rule announced in Northern Ins. Co. v. Grandview, 183 U. S. 308, was controlling, and this court reversed the trial court for permitting the introduction of oral testimony to change and vary the terms of the application and contract of insurance. In making the application of the rule, Mr. Chief Justice Turner stated the following:

"In applying the rule of law adopted by the Supreme Court of the United States in said case to the case at bar, and following the same we do not wish to be understood as laying down a rule by which this court shall be governed in the future in passing upon the same question arising in cases origi-

nating since the admission of the state of Oklahoma into the Union."

This Ceaphus case appears in this court upon second appeal in 51 Okla. 89, 151 Pac. 568. After the case had been reversed the insured offered an amendment to his petition in the matter of reforming his policy in the trial court, and the trial court permitted such amendment, and on second appeal this court upheld the act of the trial court in permitting the reformation of the contract of insurance in the nature of an amendment to the plea. The second paragraph of the syllabus of said case reads as follows:

"Where a policy of insurance does not represent the intention of the parties thereto because of the fault or negligence of the agent writing the policy, such policy may be reformed so as to express the contract as it was intended to be made."

The cases of Dorman v. Connecticut Fire Ins. Co., 41 Okla. 509, 139 Pac. 262; Liverpool, London & Globe Ins. Co. v. McLaughlin, 70 Oklahoma, 174 Pac. 248; Shawnee Mutual Fire Ins. Co. v. McClure et al., 39 Okla. 535, 135 Pac. 1150; McCracken v. Travelers' Ins. Co., 57 Okla. 248, 156 Pac. 640, are cases cited by the plaintiff in error in this case and appear to be mainly relied upon by them to support their conclusion. But these cases are not like the instant case and are suits based upon contracts of insurance expressed or implied and do not sound in tort seeking to recover for neglect as in the instant case. They involve the question of determining whether there was or was not a contract of insurance, as determined by the technical tests of contracts.

There are two Oklahoma cases that seem to be more directly in point, but neither is a negligence case; one being State Mutual Ins. Co. v. Green, 62 Okla. 214, 166 Pac. 105, and the other Phipps v. Union Mutual Ins. Co., 50 Okla. 135, 150 Pac. 1083. The second paragraph of the syllabus of the last cited case reads as follows:

"Such soliciting agent, however, can bind his company, with regard to matters within the limited and restricted scope of his authority; that is to say, in matters pertaining to the taking and preparation of applications for insurance, for submission to the company."

The theory thus laid down in the quoted syllabus has been enacted into law in this state by special enactment, section 3462, Rev. Laws 1910, reading as follows:

"Any person who shall solicit and procure an application for insurance, in all matters relating to such application for insurance and the policy issued in consequence thereof. shall be regarded as the agent of the company issuing the policy, and not the agent of the insured. and all provisions in the application and policy to the contrary are void and of no effect whatever."

We conclude, therefore, that this state affords no case involving an action against an insurance company sounding in tort and seeking to recover damages for negligent delay and failure to issue an insurance policy. but we think the principle involved has been adopted in this state, as shown by the statute and the cases cited and quoted from.

The facts in the instant case. as shown by the admissions in the agreed statement of facts, reasonably sustain the trial court in his holding in favor of the insured herein. The facts show that these two insured were operators of a threshing machine. A soliciting agent of this company came to them and solicited their insurance on this thresher outfit, and an application and note for premium were drawn up on the day they were solicited and to be signed the day the machinery arrived. The solicitation for the insurance was June 5th. On June 15th the machinery arrived and the application and note were signed and forwarded to the soliciting agent, who received the same in due course of mail from Pond Creek to Enid, Okla. He carried the application and note immediately to the general agent who had supervision over applications and general supervision over soliciting agents in his district. He notified the soliciting agent that the note was $5.40 short of what it should be, and that the due date should be made July 15th instead of July 20th. The soliciting agent notified the plaintiffs of the change that would be required, and they instructed him to make the alterations in the note as requested by the general agent, and the soliciting agent communicated this direction to the general agent, or to his secretary or stenographer at his office. The general agent failed either to make the change or to notify the plaintiffs of his refusal to make the change. and failed to submit the note and application to the company until after June 30th. when all the property insured was destroyed by accidental fire except the main belt.

In stating the powers of the soliciting agent in the agreed statement of facts and the allegations of plaintiffs' petition, it is stated that his authority consisted in soliciting insurance for the company. tak-

ing applications, and collecting premiums, which he could do either by sending them into the office at Rockford, Ill., or submitting them to the general agent. It has been laid down in the authorities that we have heretofore cited and quoted that the scope of the authority of a soliciting agent is plenary and complete as that of the company itself in everything pertaining to the solicitation and the taking of an application for insurance, in other words, the taking of a contract for insurance; and that his acts within the scope of said authority are the acts of the company. That is the same as saying that his wrongs, his neglect, and his unreasonable delay are the wrongs, neglect, and delay of the company itself. It may be said that he has the authority to turn it over to the general agent, his direct supervisor, but in ·the agreed statement of facts, defining the scope of his authority, it is stated that he had the authority either to send it to the office of the western branch at Rockford, Ill., or to the general agent. Besides, no secret or private limitations on the authority of an agent, limiting the authority even of a special agency, and which are not called to the attention of those who deal with such agent, are binding upon those who deal with such agent. It was the duty of the agent to know when the due date of these notes should be. It was his duty to know the amount of premium that was required in the event the payment of the premiums were deferred. The insured had a right to rely upon this and the further fact that the agent knew how to get them a proper application for insurance. The company was bound in the same way relative to all subsequent negotiations pertaining to said application, and when this agent was authorized to make. this change by the insured, and did not request that it be done differently, the insured had a right to rely upon the fact that it would be done as agreed.

To revert now to the position in which the general agent stood: The powers of the general agent are set out in the agreed statement of facts, and among them he had general supervision over soliciting agents in his territory, authority to inspect applications in order to say that they were properly executed before forwarding them to the defendant's branch office at Rockford, Ill., for approval or rejection. So, the very thing that this general agent tried to do, he was specifically and specially authorized to do by the insurer, and this most certainly contemplated that when he discovered the premium note was not drawn according to the rules of the company, it was

his duty to see that the same was properly executed and done promptly, which note, thus corrected, together with the application, forwarded promptly to Rockford. This duty he owed the insured as well as the company. If he failed to do these things in the manner the law required him to do, then his principal becomes liable to the injured insured for whatever damage resulted to them from such negligent conduct. We assert and repeat, that it was as much the duty of this general agent to see that these notes were properly executed, or their proper execution refused, as it was his duty to forward the application and notes promptly to the company.

We fail to see, under the admitted facts in this case, where these insured have been guilty of any neglect of duty upon their part. They relied, as they had a right to do, upon this soliciting agent to procure this insurance for them, and when they were notified of the required change in the note by the soliciting agent, they directed him to make the change, and he either expressly or impliedly assented to this arrangement, and they had a right to rely upon this being done. It was then the duty of these agents either to make the change in the note and immediately remit this application for approval to the Rockford office, or, if refusing to make the change themselves, they should have drawn a new note and application and come immediately to the insured and had the new ones signed and then immediately forwarded them in to the western office at Rockford, Ill., for approval.

We have cited and quoted the authorities upon the proposition that the company is bound by the acts of these agents acting within the purview of their authority, and this is so notwithstanding the insurer undertook to disavow this relation in the written application and disown that the acts of these agents were acts of the insurer.

The threshing season was on, and this fact the company and these agents knew. They knew that these plaintiffs were relying upon this application for insurance against hazards from fire to their machinery, and under the circumstances prompt action was required. They were charging these plaintiffs extra rates for the risks during the threshing season. All of the things which we have related that the agents knew, and all of the things which it was the duty of the agents to do, were attributable to the company itself and bound the company. It is not for this insurance com-

pany or its agents to delay the completion of an insurance policy during the period of hazard in the manner that was done in this case, and then, when a loss is sustained and demands made upon them to reimburse the insured, for them to say there is no contract and no liability.

In their contention that there was no contract of insurance completed, the insurer is probably correct, but for them to take the position that they owed these plaintiffs, the insured, no legal duty to furnish or refuse to furnish this insurance with promptness, is to take a position that law, justice or equity does not support.

The judgment of the trial court is, therefore, affirmed.

HARRISON, C. J., PITCHFORD, V. C. J., and McNEILL and NICHOLSON, JJ., concur.