## SECURITY LIFE INS. CO. v. WOODS.

No. 16414—Opinion Filed May 4, 1926.

Rehearing Denied June 22, 1926.

Insurance—Action on Life Policy — False Statements in Application as to Health— Estoppel of Company by Knowledge of Agent.

Where the agent of a life insurance company, acting within the scope of his authority, is informed by the applicant that the person to be insured is at the time in bad health, such knowledge is imputable to the company; and where, in such case, the agent, notwithstanding such knowledge, prepares an application for insurance showing the person to be in good health, accepts the premium and delivers the application and premium to his company and, on such application, policy is issued and the premium retained, and the company continues to collect the premiums as they fall due until the death of the insured, the defense, that the policy was forfeited by reason of false statements contained in the application to the insurer, is not available in a suit to collect on the policy.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from Court of Common Pleas, Tulsa County; Font L. Allen, Judge.

Action by Mrs. J. B. Woods against Security Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

R. Emmett Stewart, for plaintiff in error.

P. C. Franklin and P. A. Chappelle, for defendant in error.

Opinion by RAY, C. This suit was commenced in a justice of the peace court in the city of Tulsa by Mrs. J. B. Woods to recover from the Security Life Insurance Company $242.50 on a life insurance policy issued by the Security Life Insurance Association. On issues joined, by general denial, judgment was for plaintiff, and defendant appealed to the district court of Tulsa county, and the case was transferred to the court of common pleas. From a judgment in favor of plaintiff in that court, defendant has appealed. The defendant is a life insurance company organized under the laws of this state with its principal offices in Tulsa. At the time the policy was issued, plaintiff, beneficiary named in the policy, was a resident of Tulsa, and Andrew Jackson Price, the insured, father of the plaintiff, was a resident of the city of Guthrie. The policy was issued on application of the plaintiff, without medical examination and delivered to her for 25c weekly premium. It was stated in the application that the insured was in good health. Question No. 19 of the application and the answer thereto are as follows:

"Has life proposed ever suffered from consumption, asthma, spitting of blood, habitual cough, apoplexy, paralysis, heart disease, insanity, fits or convulsions, rheumatism, disease of the liver or kidneys, cancer, ulcers, or accidents of any kind? No."

The insured had in fact suffered a stroke of paralysis about six years before, and had not wholly recovered, but was "up and able to move around at that time." He died within six months after the policy was issued. By an amended answer, filed in the court of common pleas, the defendant alleged, in substance, that the policy was issued upon the false and fraudulent representation, contained in the application, that the insured was in good health, and was, therefore, void.

Plaintiff, in her reply to defendant company's amended answer, alleged, in substance, that the application was prepared by the defendant company's soliciting agent with full knowledge of the facts and that this knowledge was imputable to the defendant company; that notwithstanding such knowledge, it accepted, kept, used, and appropriated the premium to its own use and benefit, and thereby waived any right it may

have had to declare the policy void, and was estopped to deny its liability.

Plaintiff testified that she first met the soliciting agent of the defendant in an undertaking establishment in the city of Tulsa and—

"He asked me did I want to take out some policies, and I told him I wanted to take out some on my children and my father, and he asked were they here, and I said, 'No, in Guthrie,' and he asked were they well. and I said all but my father, and he was a paralytic, but he was up and walking around, and he said, 'I will give you a straight life policy,' and I said he was in Guthrie, and he said, 'I can fix that up with the agent, because I am an old ace and have been in there a number of years,' and when he came and entered the last item, I paid the dues at the office, and when I came back I paid him."

A. E. Williams, undertaker, who was also present at the time the application was written, corroborated plaintiff's testimony. The plaintiff further testified that she did not read the application: that it was written by the company's soliciting agent, and that he signed the insured's name to the application. The company's soliciting agent denied that the condition of the health of the insured was disclosed to him, and testified that the plaintiff signed the name of the insured to the application. The plaintiff was required to write the name of the insured and her hand writing was exhibited to the jury. That exhibit is not contained in the case-made. On this conflicting evidence, and some other evidence tending to discredit the testimony of the soliciting agent, the court gave the following instruction which is complained of by the defendant company:

"A soliciting insurance agent is presumed by law to be acting within the scope of his authority in the solicitation and preparation of applications for insurance policies, and in the forwarding of same to his company, together with the initial payment, and that while acting within the scope of his authority, if you believe from the preponderance of the evidence, that the agent Toliver, with knowledge of the condition of the health of the insured at the time of making said application, as testified to by plaintiff and other witnesses, either fraudulently or carelessly misrepresented the facts to his company as to the health of the insured and caused a policy to issue thereon, then such knowledge of the health of the insured is imputed to the company and it cannot escape liability under the policy sued on herein. and that such acts of the agent become the acts of the defendant."

The contention is that knowledge of the soliciting agent of such facts as would work forfeiture of the policy is not imputable to the defendant, and some decisions from other states are cited which sustain that contention, but this court has decided to the contrary. Security Insurance Co., New Haven, v. Cameron, 85 Okla. 171. 205 Pac. 151. In Federal Life Ins. Co v. Whitehead, 73 Okla. 71, 174 Pac. 784, it is held:

"Notice of a condition that would work a forfeiture of the policy, gained by the agent while acting within the scope of his authority, is imputable to the company."

That case was cited with approval in Security Benefit Ass'n v. Green, 103 Okla. 284. 229 Pac. 1061. The second paragraph of the syllabus in that case is as follows:

"The agent, who is acting within the scope, or apparent scope of his authority in asking the applicant questions about his health, and in writing down the answers, is presumed to know what his principal desires. The agent who prepares the application for insurance from the answers of the applicant, which he declares to be satisfactory, and receives the premium for the insurance, binds his principal by the delivery of the contract of insurance. The insured has the right to believe, under the circumstances, that the contract he is receiving from the company gives him the indemnity for which he has paid his money. The acts of the agent will operate as an estoppel against the principal to plead the erroneous answers as false representations by the insured."

The defendant's requested instructions, which were refused, present in another form the question above disposed of, and it will not be further considered.

It is insisted that the court erred in permitting the plaintiff to reopen her case and file an amendment to her bill of particulars, by alleging that the defendant company had taken over the assets of the Security Life Insurance Association, and assumed liability for the payment of its outstanding policies, including the policy in this case. The court, in permitting the amendment, stated that the amendment would work a continuance of the case. After the amendment was filed the defendant company filed its amended answer and elected to proceed with the trial. It is apparent that the substantial rights of the defendant were not prejudiced by the amendment.

Prior to the commencement of the suit the defendant company tendered to the plaintiff its check in the sum of $2.50, the amount of the premiums paid. The defendant company complains of the instruction of the court that a check was not legal tender. Inasmuch as we are holding that the defendant

was liable upon its policy, the question of tender is not material and will not be considered.

After reading and re-reading the entire record, we think the requirements of the law were substantially complied with, and the judgment is affirmed.

By the Court: It is so ordered.

Note.—See under 37 C. J, p. 529 § 262.