## CLARK v. NATIONAL AID LIFE ASS'N.

No. 25706.  April 14, 1936.

Rehearing Denied May 19, 1936.

Twyford & Smith and William J. Crowe, for plaintiff in error.

Snyder, Owen & Lybrand, for defendant in error.

PER CURIAM. Attie V. Clark, plaintiff in error, hereinafter referred to as plaintiff, brought this action against the National Aid Life Association to recover on a policy or certificate of insurance on the life of her husband, Frank Clark. The judgment was for defendant, and plaintiff prosecutes this appeal.

The insured had for several years carried a policy of insurance with the Home Protective Association No. 1, doing business as Physicians' Mutual Life Club, when he received a letter from the defendant stating that the receiver of the Home Protective Association had contracted with defendant, the contract being on file wth the Insurance Commissioner of Texas, and that in compliance with that contract defendant enclosed a benefit certificate tendered on condition that insured be, and warrant that he is still, in good health, and that the enclosed receipt and ratification memorandum containing the warranty be signed by

the insured and within 30 days mailed direct to the company, and not through an agent, together with a $3 assessment. Dr. Clark, the insured, was not in good health at the time this letter and enclosure were received, nor at any time thereafter. He therefore did not sign or return the enclosure.

A few days thereafter he received another letter from the defendant, stating that they had not received his acceptance of the offer, and that "If our representative calls on you, sign up with him, but if not sign and mail direct to our office."

Thereafter, defendant's representative, a Mr. Bowdry, called upon insured, and was advised that he was not in good health and had not been in good health for about six weeks. Thereupon Mr. Bowdry stated that defendant had sent insured the wrong kind of application, and that by the terms of its contract under which it was taking over the business, defendant could not rule out the bad risks and take the good ones. He then presented and secured the signature of Dr. Clark to a receipt and ratification memorandum which did not contain the warranty of good health. He also procured a check for the assessment, which check was cashed. Defendant's original letter recited that "the cashing of your remittance may be taken as evidence of the approval of your election to transfer to this association." It conclusively appears from the record that Bowdry was defendant's agent for the purpose of soliciting insurance by way of transfers from one association to the other, to be evidenced by an acceptance receipt in the nature of an application.

The receipt for the new certificate and memorandum of ratification of membership transfer which was signed by Dr. Clark, showed on its face that it applied to an association of a similar name to that in which insured carried his original policy. A few days thereafter, upon discovery of the error, defendant wrote calling attention to the error and enclosing a correct form with a request that insured sign and return same. This request was not complied with. Defendant had received and marked the receipt "OK" before discovering the error. It received and retained the assessment until after Dr. Clark's death and made no attempt to cancel the policy.

At the close of the trial before a jury, the parties joined in a motion for a directed verdict. Thereupon the court excused the jury, and thereafter rendered judgment for the defendant.

While it is possible that a critical examination of the blank submitted by the agent would have created a suspicion as to the truth of the agent's statement that this was the proper blank, the insured had a right to rely upon the statements of defendant's agent as to the contents of the acceptance receipt or application, and was not charged with the responsibility of scrutinizing it to determine whether or not the agent's representations were true.

Defendant denies, and plaintiff contends that defendant is estopped to deny, the existence of the contract of insurance. As said in Flesner v. Cooper, 62 Okla. 263, 162 P. 1112, and quoted with approval in Texas Co. v. Pettit, 107 Okla. 243, 220 P. 956, 231 P. 463:

"The essential elements of an 'equitable estoppel' are: First, there must be a false representation or concealment of facts. Second, it must have been made with knowledge, actual or constructive, of the real facts. Third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts. Fourth, it must have been made with the intention that it should be acted upon. Fifth, the party to whom it was made must have relied on or acted upon it to his prejudice."

We are convinced from the record that Dr. Clark acted in absolute good faith. We are further convinced that the agent, whether intentionally or not, made false representations to Dr. Clark with knowledge, either actual or constructive, of the real facts, and that Dr. Clark was not chargeable with knowledge, or the immediate means of knowledge, of the falsity of the agent's representations. There can be no doubt but that Dr. Clark acted honestly upon the misrepresentations made by the agent. There can be no doubt but that he signed the application for a transfer of his membership to the defendant association and gave a check for the assessment, believing that the defendant was required by its contract with the receiver to offer him a new policy regardless of the condition of his health. The only point that we here hesitate upon is whether Dr. Clark or his beneficiary were prejudiced by relying and acting upon the agent's misrepresentations. It is evident that the state of his health would have precluded his obtaining other insurance at that time. But this was the status at the time of Dr. Clark's death. He was in possession of a benefit certificate issued by the defendant and on which he had paid the assessment. Defendant had made no attempt to recall or cancel the certificate, nor had it returned or offered to

return the assessment money. On the face of the papers shown by the record, the certificate issued by defendant was accepted in lieu of any liability of the former insurer. The status at date of death, at least, made doubtful any right to relief under the former contract of insurance.

The benefit certificate issued by defendant to Dr. Clark recites that it is issued upon an application, and upon the warranty by the applicant, that all statements made in the application are true. No new application had been signed by Dr. Clark at' this time. The only application in existence was the one on which the original certificate was issued. At that time he was in good health. However, the certificate issued by defendant contains a recital reading, "this certificate is not effective unless delivered into the manual possession of the applicant while he is still in good health."

Defendant does not contend that its benefit certificate was canceled. It merely contends that the certificate never had any legal existence as a contract of insurance. The certificate was delivered without any application being made therefor. The assessment was collected by defendant's agent with full knowledge that insured was not in good health, and was remitted to, and retained by, defendant until after death of the insured. According to a reasonable construction of defendant's own proposal, the transfer of the membership became effective when defendant cashed the remittance. Evidently defendant waived the making of a new application preliminary to delivery of the benefit certificate. The only question remaining is whether defendant, through its agent, waived the above-quoted provision of the certificate upon which plaintiff bases her action. The answer calls attention to this provision of the certificate, but no mention is made thereof in the brief of defendant in error.

The contract of insurance was tendered upon a certain condition. It was accepted by insured with the approval of defendant's agent, who, if within the scope of his authority, waived this condition. The condition is contained in the policy itself. Plaintiff in error contends in her reply brief that this condition was waived by defendant, and cites in support of her contention a Texas case to which this defendant was the unsuccessful party. This case is National Aid Life Ass'n v. Murphy (Tex. Civ. App.) 78 S. W. (2d) 223, holding that the provision of a benefit certificate reading that it should not be effective "unless delivered into the manual possession of the appli-cant while he is still in good health," was waived where the general agent of the insurance association accepted payment of a special assessment knowing that insured was in bad health.

Mr. Bowdry was not a general agent, but was an agent authorized to work on, that is, to solicit and procure the completion of, membership transfers. In a letter to insured defendant says:

"At the time we made contract with the Physicians' Mutual Life Club agreeing to offer memberships to their members then in good standing, we also made contract with the Mutual Life of America. Inasmuch as our representatives were working on membership transfers from both associations and since the acceptance receipts were entirely different, it was not at all impossible, although unintentional, to give out the wrong acceptance receipt."

In Pritchard v. American Nat. Ins. Co. of Galveston, Tex., 139 Okla. 248, 281 P. 774, the defendant insurance company contended that no obligation existed by reason of the terms of the policy reading "That no obligation is assumed by the company prior to the date hereof nor unless on said date the insured is alive **and in sound health."** In other words, the contention was that since the evidence showed the insured was not in good health at the time of application and delivery of the policy, the contract by its terms never became effective, but always was conditioned upon the fact of sound health. The court said:

"We do not accept that rule, for in Federal Life Ins. Co. v. Whitehead, 73 Okla. 71, 174 P. 784. it was held: 'Notice of a condition that would work a forfeiture of the policy, gained by the agent while acting within the scope of his authority, is imputable to the company.' And in Security Benefit Ass'n v. Green, 103 Okla. 284, 229 P. 1061, this court held: 'The agent who is acting within the scope of his authority in asking the applicant questions about his health, and in writing down the answers, is presumed to know what his principal desires. The agent who prepares the application for insurance from the answers of the applicant, which he declares to be satisfactory and receives the premium for the insurance. binds his principal by the delivery of the contract of insurance. The insured has the right to believe, under the circumstances, that the contract he is receiving from the company gives him the indemnity for which he has paid his money. The acts of the agent will operate as an estoppel against the principal to plead the erroneous answers or false representations by the insured.' See, also, Security Ins. Co' v.

Cameron, 85 Okla. 171, 205 P. 151, 27 A. L. R. 444. That rule was reiterated in Security Life Ins. Co. v. Woods, 118 Okla. 156, 247 P. 356."

As heretofore noted, defendant admitted that Mr. Bowdry was authorized to work on transfers of memberships to the defendant, and was further authorized to procure insured's signature to an acceptance receipt which he, Mr. Bowdry, would "give out."

In Security Life Ins. Co. v. Woods, supra, the court said:

"The contention is that knowledge of the soliciting agent of such facts as would work a forfeiture of the policy is not imputable to the defendant, and some decisions from other states are cited which sustain that contention, but this court has decided to the contrary. Security Insurance Co., New Haven v. Cameron, 85 Okla. 171, 205 P. 151, 27 A. L. R. 444. In Federal Life Ins. Co. v Whitehead, 73 Okla. 71, 174 P. 784, it is held: 'Notice of a condition that would work a forfeiture of the policy, gained by the agent while acting within the scope of his authority, is imputable to the company.' That case was cited with approval in Security Benefit Ass'n v. Green, 103 Okla. 284, 229 P. 1061."

The petition alleges that defendant, for a good and valuable consideration, executed and delivered the benefit certificate which is set out in full as an exhibit, and further alleges that said certificate was in full force and effect at time of the death of the insured. The answer denies that the certificate was ever in effect, and sets out an exhibit which recites that the former insurer is released upon receipt of the acceptance receipt and acceptance of insured's remittance by defendant. The reply alleges that "the deceased acted in the utmost good faith in purchasing and securing the insurance policy sued upon, and that the defendant, with full knowledge of all the facts, accepted the premiums and charges paid by the deceased to the said defendant, and thereby waived any irregularities in the issuance of said policy and is estopped from questioning the validity thereof." Considering the pleadings in their entirety, it appears that the estoppel of defendant was clearly in issue, and that defendant had ample notice thereof and of the facts relied upon, although plaintiff could well have been more specific in her reply.

We therefore hold that the good health provision of the benefit certificate was waived by the defendant, and that defendant was estopped to deny that the contract of insurance was in effect at date of death of the insured.

There does not appear to be any conflict in the evidence upon any material question of fact. It appearing that the record in this case presents a question of law only, the judgment is reversed and the cause remanded, with directions to enter judgment for plaintiff on the benefit certificate.

The Supreme Court acknowledges the aid of Attorneys A. B. Honnold, Summers Hardy, and T. W. Arrington in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Honnold, and approved by Mr. Hardy and Mr. Arrington the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.