## BROWN v. MISSOURI STATE LIFE INS. CO.

No. 16805—Opinion Filed Dec. 21. 1926.

Rehearing Denied March 22, 1927.

1. **Insurance—Liability of Company for Damages for Negligent Delay in Passing Upon Application.**

It is the duty of an insurance company, having solicited and obtained application for insurance and having received the premium exacted therefor, to pass upon the application within a reasonable time by denying the insurance or by writing and delivering the policy as applied for; and the insurance company is liable for damages occasioned by its negligent or unreasonable delay in passing upon such application.

2. **Same—Incompetent Evidence on Defense of Diligence.**

In an action to recover damages for delay in passing upon an application for insurance, letters written by the insurance company to its agents instructing them to have the applicant to submit to an additional examination, when it is not made to appear that the agents executed such instructions, are immaterial and incompetent and not admissible as evidence tending to show diligence on the part of the company.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Cotton County; A. S. Wells, Judge.

Action by Alanson C. Brown against Missouri State Life Insurance Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Robert E. Moloney. Stevens & Cline, Madden & Hubbell, and West, Gibson, Sherman, Davison & Hull, for plaintiff in error.

Keaton, Wells & Johnston, Jourdan & English, and A. H. Japp, for defendant in error.

Opinion by JARMAN, C. Alanson C. Brown, hereinafter referred to as plaintiff, was associated with Joseph F. Drake, hereinafter referred to as the applicant, in an oil venture. Plaintiff was to furnish the money, while the applicant, who was an experienced and practical oil man, was to contribute his knowledge, services, and skill to the project. All of the transactions hereinafter referred to occurred in 1923. The plaintiff had contributed about $90,000, and it was agreed that the applicant should procure a five-year term policy of insurance in the sum of $100,000 on his life, payable to the plaintiff as beneficiary for the purpose of indemnifying plaintiff for the sums of money advanced and to be advanced, and the policy was to be delivered to the plaintiff and the premiums to be paid by the plaintiff. Pursuant to this agreement, application was made by Mr. Drake on August 8th to the Missouri State Life Insurance Company, hereinafter referred to as defendant, through its local

soliciting agent at Walters, Okla. At the time of making application, the applicant submitted to a medical examination conducted by Dr. Janes, who reported that the applicant was a first-class risk for insurance. The amount of the first premium, as represented by the soliciting agent, was $1,031, which the applicant paid at the time his application was taken for the insurance, out of funds furnished by the plaintiff, and the soliciting agent executed a receipt therefor, stating that the policy when issued and delivered by the company "shall  *  *  *  be dated and be effective in accordance with the provisions of such policy on and from the date of the medical examination." The application and the medical report were forwarded to the home office of the defendant at St. Louis and received on August 13th. On account of the large amount of insurance applied for, the defendant, acting under its rules, notified its agent at Walters on August 14th to cause a second medical examination of the applicant to be made by a different medical examiner. On August 20th, in keeping with these instructions, the applicant submitted to a second examination by Dr. A. M. Jones of Walters, who likewise reported that the applicant was a first-class risk for insurance. The report of Dr. Jones and a specimen of the urine of the applicant were forwarded to and received by the home office of the defendant on August 22nd. The applicant heard nothing further about the insurance until about September 26th, when Mr. Brown, the soliciting agent of the defendant, notified him that the defendant required that the applicant be examined a third time and that he be given a "glucose meal." At that time, the applicant was at Ryan or out in the country some distance from Walters, where the examination was to be made, and on account of drilling operations requiring his personal and immediate attention he was not able to go to Walters at that time, but stated that he would do so and submit to the examination at his first opportunity. On October 15th, the applicant reported to Dr. Jones for the glucose test, which was administered for the purpose of enabling the defendant to ascertain positively whether the applicant had any trace of sugar in his urine. A specimen of applicant's urine was then forwarded to and received by the home office of the defendant on October 17th, and an analysis thereof showed that the specimen contained no sugar, and on October 19th, the application for insurance was approved by the defendant and the policy was written, but before the same was mailed or delivered the defendant received information

that the applicant had been killed in an automobile accident, and the policy was thereupon canceled.

This action was commenced by the plaintiff to recover damages which he alleged were caused by the negligent or unreasonable delay of defendant in acting or passing upon the application for insurance, thereby preventing a delivery of the policy prior to the death of the applicant. The trial resulted in a verdict for defendant. on which judgment was rendered, and the plaintiff has appealed.

It is well settled in this jurisdiction that damages may be recovered when an insurance company negligently or unreasonably delays in acting or passing upon an application for insurance; and in such case it is for the jury to determine whether the delay was negligent or unreasonable. Columbia National Life Ins. Co. v. Lemmons, Adm'r, 96 Okla. 228, 222 Pac. 255; Security Ins. Co. v. Cameron, 85 Okla. 171, 205 Pac. 151; Duffy v. Bankers' Life Ins. Co. (Iowa) 139 N. W. 1087, 46 L. R. A. (N.S.) 25.

The main issue submitted to the jury in the instant case was whether the defendant negligently or unreasonably delayed passing upon the application for insurance.

The assignment of error, decisive of this appeal, urged by plaintiff is that the jury was prejudiced by incompetent and irrelevant testimony introduced by the defendant over plaintiff's objection.

The specimens sent in connection with the second report of the physical examination made by Dr. Jones and received by the defendant at its home office on August 22nd were analyzed and showed what is termed a "suspicious re-action." indicating the presence of sugar in the urine. On August 23rd, defendant wrote to Dr. Jones advising the result of the analysis and directed that he cause applicant to submit to a "glucose test," and gave specific instructions therefor and sent containers for specimens to be taken after the test was given and requested that they be forwarded as soon as possible so another analysis could be made. Not receiving a reply to this letter, the defendant on September 4th wrote a second letter to Dr. Jones. referring to the former one and requesting a reply. On September 7th, Dr. Jones wrote a note on the back of defendant's letter of September 4th stating that the applicant had been away and that he would be back in a few days and "I will attempt to get the glucose test if possible."

Hearing nothing further, the defendant on September 19th wrote a third letter insisting on the specimens; getting no results, the defendant on September 27th wrote to its general agents, Kueffer & McCracken, at Oklahoma City, requesting that they cause their agent to "arrange for a meeting between the applicant and examiner in order that the information desired by us can be furnished." The next thing done, the defendant again wrote to its general agents at Oklahoma City stating that the "application is still in our pending file awaiting additional information requested from Mr. Jones." Finally the specimens were received on October 17th and the analysis made showing an absence of sugar and the application for the insurance was approved on October 19th as hereinabove stated.

Plaintiff insists that said letters were improperly admitted in evidence for the reason they were merely instructions from the defendant to its agents which were never executed, and. therefore, did not tend to establish diligence on the part of the defendant to pass upon the application for insurance which would excuse the delay in respect thereto. W. U. T. Co. v. Cleveland (Ala.) 53 So. 80; W. U. T. Co. v. Johnson (Tex Civ. App.) 28 S. W. 124; Healy v. Johnson (Iowa) 103 N. W. 92. We think these letters were not only inadmissible as evidence, but that they were highly prejudicial, especially in view of the remarks of the trial judge in overruling plaintiff's objection to the introduction of the letters, to wit: "I think it (referring to one of the letters) is competent to show that they used due diligence." The position of plaintiff is well taken under the authorities cited. As far as this record discloses, Dr. Jones never attempted to carry out defendant's instructions by communicating with and having the applicant to report for the glucose test: the most he did was to tell Mr. Brown, the local agent that such test was required. There is nothing to show that the general agents of the defendant at Oklahoma City ever did anything to carry out the instructions given them in the letters. At whose instance the local agent, Mr. Brown, finally notified applicant of the requirement, the record is silent. By this array of letters, in the light of the remark of the trial court that he thought they were competent to show the defendant used due diligence. the jury probably could have arrived at the conclusion that the defendant was very diligent in trying to procure the specimens so the application could be passed upon, when, as a legal proposition, the letters were mere gestures. As far as the effect of these letters is concerned, it was just as well that they had not been written, since the applicant was not advised of their contents. The letters were written by the principal to its agents; in effect, they were communications within the defendant's own household and amounted to nothing more than the defendant talking to itself. Had it been shown that the agents made diligent inquiry and search for the applicant or had written him letters at his usual address or that they did not know his whereabouts and were unable to locate him, we would then have a different question confronting us. The applicant had done all he could by making the application for insurance, submitting to the first and second examination and paying the premium; and he had the right to assume that his application would be acted upon within a reasonable time and that if further information or data was required of him, the defendant would notify him to that effect; and it was not his duty to make further inquiry about it under such circumstances. Duffy v. Bankers' Life Ass'n, supra.

We, therefore, hold that said letters were incompetent and were calculated to be highly prejudicial to the plaintiff in the trial of the cause: and the judgment of the trial court is reversed and the cause remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 32 C. J. p. 1103, §188 (Anno); anno. 36 L. R. A. (N. S.) 1211; 15 A. L. R. 1026; 27 A. L. R. 463; 14 R. C. L. p. 896; 3 R. C. L. Supp. p. 309; 4 R. C. L. Supp. p. 928; 5 R. C. L. Supp. p. 784; 6 R. C. L. Supp. p. 838. (2) 32 C. J. p. 1103, §188.