## LATHAM et al. v. HOUSTON LAND & TRUST CO.

### No. 9850.

Court of Civil Appeals of Texas. Galveston.
May 17, 1933.

Rehearing Denied June 8, 1933.

C. G. Krueger, of Bellville, and C. A. Teagle, of Houston, for plaintiffs in error.

Robt. Ring and W. P. Hamblen, both of Houston, for defendant in error.

LANE, Justice.

This suit was instituted by J. O. Latham and others, children of Ida Latham, hereinafter for convenience referred to as plaintiffs or appellants, against Cora Jordan, widow of one G. W. Jordan, deceased, individually and as independent executrix of the will of G. W. Jordan. Cora Jordan died pending the suit and the Houston Land & Trust Company qualified as executor of her will and was made a party defendant in this suit. Said company will be hereinafter referred to as defendant or appellee.

.The suit was one to recover a trust fund alleged to have been placed in the hands of G. W. Jordan by John Jordan, during his lifetime, for the use and benefit of the plaintiffs. Plaintiffs specifically alleged that John Jordan, deceased, who was the father of Ida Latham and of G. W. Jordan, did, some time in January, 1903, turn over to G. W. Jordan the sum of $12,000 to be held, kept, preserved, and managed by G. W. Jordan, during his lifetime, and at the death of G. W. Jordan said funds and their accumulation were to be paid over to Ida Latham or her children; that Ida Latham died in 1909, leaving plaintiffs, her children, and her husband, Sam Latham, as her only heirs; that G. W. Jordan died in the year 1920. They pleaded a letter alleged to have been written by G. W. Jordan, to J. O. Latham, wherein he acknowledged the receipt of the alleged trust fund.

Defendants denied the creation and existence of the alleged trust fund. They denied that the letter pleaded by the plaintiffs had been written by G. W. Jordan, and alleged that such letter was a forgery.

The cause was tried before a jury, to which the court submitted the following special issue: "Did John Jordan give to G. W. Jordan the sum of Twelve Thousand Dollars on or about the ——— day of January, 1903?" The jury answered such inquiry: "No."

Upon the verdict of the jury and the evidence, the court rendered judgment that the plaintiffs take nothing by their suit against the Houston Land & Trust Company "as Inde-

pendent Executor of the Estate of Mrs. Cora Jordan, deceased." From such judgment the plaintiffs gave notice of appeal and brought the cause to this court upon a writ of error.

Appellants introduced in evidence an envelope addressed to J. O. Latham at Eagle Pass, Tex., with return address as follows: "After 5 days return to G. W. Jordan, Investments, 302 Lumbermans Bank Building, Houston, Texas." Such envelope bore stamp: "Houston, Texas, Jul. 24, 5 P. M., 1918."

Appellant J. O. Latham testified that inclosed in said envelope he received a letter, which the plaintiffs introduced in evidence, which reads as follows:

"G. W. Jordan,
"Investments.

"Phone Preston 2503
"307 Houston Power & Lighting Co. Bldg.

"Houston, Texas, 7/24/1918.
"Mr. J. O. Latham
"Dr. Oliver

"Your letter of July 22 Received with your will Inclose & I must say the Instrement is Well composed. I hope you will live to get throug the war & come out all right. It reminds me of my will. In it I provided for you three children. You are to get twelve thousand dollars with all acrued interest that Father left with me for Ida & her children a few yrs before his death I have kept it in good loans most all time at ten per cent per anum. It ought to amount to at least thirty thousand dollars by now. You three children will get this money divided equally between you. Cora is going to raise hell about it for she is afraid I am going to give the Latham children part of my property at my death. (over) You do not need any money much before you are thirty yrs old. Some time ago you wrote me you children were going to sue & break Fathers will where Ida was disenherited. You must never do this Boy for I will not let you. Let that will stand as it was made. I am taking care of you children at my death. At time my arm is weak & I can hardly write. I sold the Hare farm for twenty thousand five hundred dollars. If you had of stayed on this ranch I inteded for you to have it at my death, but now you & the girls can have it in money between you. I don't blame you for leaving the ranch for it is a hell of a place to live. Well Boy be a good Soldier & obey your superiors. Get off & visit us soon when you are discharged I want you to come & live with us & help me in my business if Cora don't raise to much hell. Write me soon.

"Yours very truly, G. W. Jordan."

■ As already stated, appellee in its answer denied that G. W. Jordan wrote the letter and alleged that it was a forgery. Appellee in its effort to show that the letter was not written by G. W. Jordan, but that it was wholly written by the plaintiff J. O. Latham, was permitted by the court, over objection of plaintiffs, to introduce in evidence a number of checks signed by G. W. Jordan, deceased, and certain papers signed by J. O. Latham, for the purpose only of comparing the writing and the signatures on the several papers with the writing and signature on the alleged forged letter.

The objections urged to the introduction of the checks admitted to have been signed by G. W. Jordan, deceased, are shown by appellants' bill of exception No. 1, and are as follows:

First. "We shall object because irrelevant and immaterial to any issue in the case."

Second. "We contend you can't do that. We get to that part of it later on, but what we are objecting to is the introduction of them—attempting to mislead the jury away from the issues in this case. The issue is whether or not the trust fund was created, or whether or not that letter is a forgery, and that is the only issue before this jury. We are contending that is irrelevant and immaterial."

Third. "It doesn't shed any light upon the matter under investigation and we except to the ruling of the court."

And the objection urged to the introduction of papers admittedly signed by plaintiff J. O. Latham is shown by bill of exception No. 2, and is as follows: "We object to that for the reason that they can't do that in that manner."

Appellants now insist that the court committed reversible error in permitting in evidence the several papers for the reasons set out in their bills of exceptions 1 and 2.

We overrule appellants' contentions. Upon a former appeal of this cause our Supreme Court, in an opinion, Latham v. Jordan, reported in 17 S.W.(2d) 805, 807, settled the question adversely to appellants by the following language: "It was not error to admit in evidence the instruments admitted to be written by the plaintiff James O. Latham for the purpose of comparison with the alleged forged letter, even though such instruments were otherwise irrelevant to any issue in the case." Citing 10 Ruling Case Law, § 182, p. 996.

While the quotation refers only to instruments written by J. O. Latham, the rule there stated applied with equal force to those instruments written by G. W. Jordan, deceased.

An order book was exhibited to plaintiff J. O. Latham while testifying for the plaintiffs, containing certain entries, and he was asked by counsel for defendant if the entries therein were not written by him. To such question the witness answered: "I believe it is." Whereupon Judge Krueger, counsel for the plaintiffs, made the following objection as shown by appellants' bill of exception No. 3:

"We object to the book because that is immaterial and irrelevant to any issue in the case and doesn't shed any light upon the matter under investigation." The court overruled the objection urged, and the witness answered: "That is my handwriting." And upon receiving such answer the entries in the book were admitted in evidence for the purpose only of comparison with the handwriting of the person who wrote the alleged forged letter plead by the plaintiffs.

Appellants in this court contend that the admission of such entries in evidence constitutes reversible error.

We overrule the contention. The holding of the Supreme Court with reference to instruments written by plaintiff J. O. Latham, hereinbefore quoted, disposes of the contention here made adversely to appellants.

While J. O. Latham was on the stand as a witness, he was shown a letter by counsel for defendant, and he was then asked by said counsel if upon a former trial of this cause he was not asked if he had written the letter and if at that time he had said: "I will not say whether I did or not. I might have. Q. Don't you know that you did? A. Well, it is there in the evidence. Q. Don't you know that you didn't identify a single one of those letters on the previous trial?" Appellants' bill of exception No. 4 shows that at this point counsel for appellants stated: "We object to him arguing with the witness. He can ask the question and let the witness answer."

Appellants contend that their bill No. 4 presents reversible error. We overrule such contention without further comment.

The complaint of appellants of the action of the court in admitting in evidence entries in a ledger, made by G. W. Jordan, as disclosed by appellants' bill No. 5, is overruled for the same reason given for overruling appellants' contentions Nos. 1, 2, and 3.

Appellees offered the testimony of Alex Jordan, taken by deposition, to the effect that he was the son of John Jordan and a half-brother of G. W. Jordan, and who stated that John Jordan, his father, had never discussed the trust fund and that he never mentioned it to him and that he had never heard this trust fund discussed or mentioned by G. W. Jordan, or Sam Latham, or Ida Latham, or any other member of the family of John Jordan.

Appellees offered in evidence the testimony of Mrs. W. R. Beadle, who testified that she was a sister-in-law of Sarah E. Jordan, who was the widow of John Jordan, deceased, and that she was a sister of Sam Latham, the father of plaintiffs and plaintiffs' principal witness, and that this trust fund had never been mentioned to her by either Sam Latham or Ida Latham.

Appellees offered the testimony of W. R. Beadle, husband of Mrs. Lizzie Beadle, who was a brother of the widow of John Jordan, and who testified that this trust fund was never mentioned to him by Sam Latham or Ida Latham.

Appellees then offered the testimony of Mrs. Sarah E. Jordan, the widow of John Jordan, deceased, who testified that she married John Jordan in 1882 and lived with him until his death in 1906, and that John Jordan had two children by his first wife, one of whom was G. W. Jordan, and a child who died in infancy, and by his second marriage there was one child who died in infancy, and that there were five by his third wife, four of whom survived their father, and five children by Mrs. Sarah Jordan, his fourth wife, four of whom survived their father, so that John Jordan was survived by nine children. That she had lived continuously with John Jordan from the time of their marriage until his death, some twenty-four years, and was generally familiar with his business affairs. That John Jordan had never discussed this trust fund with her and never mentioned it to her if it ever existed. That she had never heard this trust fund discussed or mentioned by John Jordan or G. W. Jordan or Sam Latham or Ida Latham, or any other member of the family of John Jordan. That she never heard of it at all until after this suit was brought. That G. W. Jordan had filed a suit against his father for G. W. Jordan's interest in his mother's estate, and that for three or four years prior to John Jordan's death, Ida Latham or Sam Latham did not visit John Jordan and he did not visit them. That they had nothing at all to do with one another, and that Sam Latham's reputation for telling the truth was bad.

Appellees offered the testimony of Judge D. I. White, an aged and reputable attorney of Huntsville, Ala., who testified that he had known John Jordon for twenty or thirty years prior to his death. That he was attorney for John Jordan ten or fifteen years prior to his death and that so far as he knew he never had any other attorney to represent him; that he wrote the will of John Jordan in 1902, and the codicil in 1903. That he never heard of the trust fund mentioned in this suit; that he never heard of any deposit of the alleged trust fund by John Jordan until a year ago and after this suit was brought; that John Jordan never discussed this matter with him; that he knew Ida Latham and she never discussed this trust fund with him, and that John Jordan never mentioned this trust fund to him.

Appellees offered the deposition of Mrs. Sallie Summers to the effect that she had formerly been married to Sam Latham; that they were married in Nashville, Tenn., June 14, 1911, and that they immediately moved to Huntsville, Ala., where they lived for eight years; that she had frequently heard Sam Latham and the plaintiffs in this suit mention G. W. Jordan, but that she never had

seen G. W. Jordan and he never visited Sam Latham so far as she knew, and that she never saw any letters from G. W. Jordan or Sam Latham with reference to the trust fund, and that she never heard Sam Latham, Oliver Latham, or Katherine Chandler, or Elizabeth Love, appellants herein, mention or say anything about any trust fund held by G. W. Jordan, and that she had never heard Sam Latham or Oliver Latham, or Katherine Chandler or Elizabeth Love, or any of them, make any statement that G. W. Jordan had or held any money for them, and when being asked on cross-examination if it would be anything unusual, her answer was if they were expecting that money, it would have been unusual for them not to mention it in eight years.

Appellants objected to the admission of such evidence, and assign its admission as reversible error.

We overrule the assignment, and in doing so we adopt as our own the reasons given by counsel for appellees as to why such evidence was admissible, as follows: "Certainly this testimony is cogent and material. It is not hearsay testimony. It is a statement of a fact and very cogent and material and so far as appellants are concerned, damning, in that this trust fund was never mentioned by themselves in their close family conversations; that Sam Latham never mentioned it to his wife who had never seen G. W. Jordan or any letters from him, although G. W. Jordan is supposed to have visited Sam Latham during the time that Mrs. Summers was married to Sam Latham, according to Sam Latham's testimony; and that these children who had all this money coming to them never thought of mentioning it; and that it was not known to the wife of John Jordan, the man who put up this $12,000.00, this Alabama farmer with less than $2000.00 in the bank at any time; paying over $12,000.00 to G. W. Jordan, his son, who had sued him, to invest for a daughter with whom he was very angry for having married Sam Latham and who he disinherited in his will; and who gave this daughter eight times more than any of his other children got at his death. Mrs. Sarah Jordan testified that she was generally familiar with his business affairs, but he never mentioned that $12,000.-00 to her."

In 17 Texas Jurisprudence, p. 358, it is said: "Negative testimony that a person did not see or hear a particular incident, or did not hear a particular remark, is admissible, even in opposition to affirmative testimony that the incident occurred or the remark was made, where such person is so placed, and the circumstances surrounding him at the time as to his ability to see and hear are such that his failure to see or hear the incident may be inconsistent with the happening of the event."

The rule just stated is supported by other authorities, as follows:

The fact that testimony is negative in character goes only to its probative force and not to its admissibility. Sloan v. Sloan (Tex. Civ. App.) 32 S.W.(2d) 513, 518.

"The question is one of nonentity, and naturally calls for testimony of a negative character. Such evidence is necessarily the best of which the issue is susceptible." Wallace v. Byers, 14 Tex. Civ. App. 574, 38 S. W. 228, 230.

And of the issue of existence of a corporation by a particular name, it is competent to show by a witness that he had never heard of a corporation, partnership or business concern of any kind doing business under that name. Cobb v. Bryan, 37 Tex. Civ. App. 339, 83 S. W. 887.

"The statement is negative in character, but that goes only to its probative force. We see no reason why the witness' failure to hear a remark inquired about may not be testified to when the circumstances are such as to properly lead to the inference that the remark would have been heard had it actually been made, in opposition to affirmative statements that such a remark or declaration was made. We have concluded that the admission of the evidence was not error." Sloan v. Sloan, supra.

■■ The testimony of J. T. Matthews as to who wrote the alleged forged letter was received in evidence over objection of appellants. The witness testified that he had known G. W. Jordan about fourteen years prior to his death and had had numerous business transactions with him; that he was pretty familiar with his handwriting, that he would not state positively he would know such handwriting if he should see it, that he had some of Mr. Jordan's writings; that he saw the letter (the alleged forged letter) a while ago and it imitates Mr. Jordan's pretty close, but that he would not take it for Mr. Jordan's signature; that the "G" is not exactly like Mr. Jordan's, nor is the "J" like Mr. Jordan's writing. Referring to another letter shown him, he said: "I would take this to be Mr. Jordan's signature."

Appellants contend that such testimony was erroneously admitted, in that the witness had not qualified as an expert on handwritings. We overrule the contention. We think the witness showed that he was sufficiently acquainted with the signature of G. W. Jordan to justify the admission of the testimony complained of. Where a witness has seen the handwriting of the person in question, or has seen him write, he may testify as to such handwriting. See note 2 under article 731, Vernon's Criminal Procedure 1925, and many cases cited thereunder.

■ It was shown by the undisputed evidence that one J. Fordyce Wood was a noted

expert on handwritings. He was handed a photographic copy of the alleged forged letter. He testified that he made the negative from which said copy was made; that he took the negative to a photographer and saw the copy made from the negative made by himself; that aside from the fact that it is enlarged, it is a true, accurate, and correct copy of the letter. The witness examined the alleged forged letter and several writings, some written by G. W. Jordan and others by plaintiff J. O. Latham. He then compared them with an enlarged photographic copy of the alleged forged letter and an enlarged photographic copy of a letter written by G. W. Jordan. The G. W. Jordan letter was dated July 23, 1918, and the alleged forged letter bore date July 24, 1918. The witness testified that, based upon his experience with handwriting and his examination of the several documents shown him, he was of opinion the letter of date July 24, 1918 (the alleged forged letter), was not in the handwriting of G. W. Jordan; that after his examination and comparison of the several papers, some admittedly written by G. W. Jordan and others by plaintiff J. O. Latham, he was of opinion that the letter of July 24 (the alleged forged letter) was written by the same person who wrote the documents submitted to him as being in the handwriting of J. O. Latham.

After the receipt of the foregoing testimony, the court admitted, over objection of appellants, the enlarged photographic letters and others in evidence for the purpose of comparison.

Appellants assign the action of the court in admitting the enlarged photographic copies in evidence as error.

We do not think the court erred in admitting the letters as enlarged in evidence. Instruments already in evidence which are so enlarged as to make the propositions in issue plain and to illustrate the testimony of the witness may be properly admitted in evidence.

In 22 Corpus Juris, p. 918, the following rule is stated: "It is no objection to the admissibility of a photograph that it is enlarged, showing the subject or object magnified, where this does not have a tendency to mislead. Photographs of instruments already in evidence which are so enlarged as to make the propositions plainer and to illustrate the testimony of witnesses may go to the jury in the same way as would a magnifying glass or microscope."

The rule stated in Corpus Juris is supported by First Nat. Bank v. Wisdom's Executors, 111 Ky. 135, 63 S. W. 461; United States v. Ortiz, 176 U. S. 422, 20 S. Ct. 466, 44 L. Ed. 529; Marcy v. Barnes, 76 Gray (Mass.) 161, 77 Am. Dec. 405; Rowell v. Fuller's Estate, 59 Vt. 688, 10 A. 853, 861. In the case last cited, the court said: "Enlarged copies of a disputed signature or writing and of those used as comparisons may be of great aid to a jury."

■ By appellants' eighteenth assignment they contend that the evidence conclusively shows that G. W. Jordan did receive the trust fund alleged by plaintiffs and therefore the verdict of the jury to the contrary is unsupported by any evidence.

We overrule such contention. There was ample evidence to support a finding that G. W. Jordan did not write the alleged forged letter, but that J. O. Latham did write it, and sign the name of G. W. Jordan to it. There was ample evidence to justify the jury in finding that no such trust fund as alleged by the plaintiffs was ever placed in the hands of G. W. Jordan by his father, John Jordan.

This suit was filed nearly four years after the death of G. W. Jordan, the alleged trustee. He could not speak. It was filed nearly twenty years after the death of John Jordan, the alleged donor. He could not speak. And necessarily, appellees had to turn to other proof, direct and circumstantial, to rebut the evidence of the appellants James O. Latham and his father, Sam Latham.

The evidence shows that in Huntsville, Ala., where John Jordan, the alleged donor, lived, there were only three banks; that John Jordan had an account in only one of said banks, to wit, the Rison Bank & Trust Company; that his total deposits during the whole period from 1901 to his death were less than $4,500; that the greatest amount shown by his account with the bank at any one time was $2,000, and that generally such deposit account was very small; that the value of his entire estate was from $20,000 to $25,000, and that he was a very stingy and businesslike man; that he had eleven children, with all of whom he was friendly except Ida Latham, the mother of plaintiffs; that he had lived with his last wife for twenty-four years and by her had four or five children, and that he was living with her at the time the alleged trust fund was created.

It was shown that G. W. Jordan received about $1,900 from his father's estate. The inventory of the estate of John Jordan, the alleged donor, and his will were offered in evidence. The inventory showed that the deceased, John Jordan, at the time of his death owned a few head of stock, about $856 in cash, a small amount in notes, and two tracts of land. By his will John Jordan made almost an equal division of his property to his several children and his wife.

By a codicil to the will he bequeathed to his daughter Ida, who had married Sam Latham, $200 only.

It is shown that he never mentioned to his wife or any of his children, his attorney, nor to any of his close associates, the creation of the trust fund alleged by plaintiffs.

No one testified that he heard John Jordan say anything about such trust fund.

If the jury was to accept the contention of appellants that the alleged trust fund was put in the hands of G. W. Jordan as alleged, they would have to find that this stingy, businesslike man gave practically half of his fortune, prior to his death, to G. W. Jordan, his son who had sued him, as a trust fund. The jury was not required to believe an improbable theory contended for by appellants.

For the reasons above expressed the judgment is affirmed.

Affirmed.