## CAPITOL HILL BURIAL ASS'N v. OLIVER.

No. 28734. May 2, 1939.

Rehearing Denied June 20, 1939.

G. G. McBride, for plaintiff in error.

V. E. Stinchcomb, for defendant in error.

DAVISON, J. This case is presented on appeal from the court of common pleas of Oklahoma county, where it was tried de novo on appeal from a justice of the peace court.

The Capitol Hill Burial Association, hereafter referred to as the "Association," is an Oklahoma corporation. It accords to its members burial benefits and issues to them certificates evidencing their rights thereto.

On the 29th day of April, 1937, an agent of the association received from Olan O. Oliver, a resident of Capitol Hill, Oklahoma City, an application for a burial certificate to cover burial expenses of the applicant and members of his family. The application was accompanied by the initial payment for the service contemplated.

It was understood, as expressed in the application, that the funeral service to be provided should be furnished by the Hunter Funeral Home. The value of the benefits contracted for was $100 per person over five years of age and $50 per person under five years of age.

The agent had not yet delivered the application to the association when, on May 3, 1937, Wilson Oliver, a 12-year old son of the applicant, was killed. The application was approved and the certificate issued without including the deceased son after the boy's death.

The burial services for the son were furnished by another funeral home. The charge was $135.

On the 30th day of June, 1937, this action was commenced by Olan Oliver, as plaintiff, against the association, as defendant, in the justice of the peace court, and thereafter on August 2, 1937, an appeal was perfected to the court of common pleas of Oklahoma county. The cause was therein tried de novo without the intervention of a jury on the 14th day of January, 1938. The judgment of the trial court was for the plaintiff in the sum of $100. The defendant association appeals, appearing herein as plaintiff in error. We shall continue to refer to the parties by their trial court designation.

The theory of plaintiff's action is that the defendant company is engaged in the insurance business; that its delay in acting upon plaintiff's application was unreasonable, and that by reason of such unreasonable delay it is liable in damages to the applicant. Plaintiff invokes as applicable the rule announced by this court in Great Northern Life Insurance Co. v. Scott, 181 Okla. 179, 72 P.2d 790, wherein we said in the syllabus, "An insurance company may be held liable in damages to an applicant for insurance where there has been unreasonable delay in acting upon his application for insurance, and the question of unreasonableness of the delay is a question of fact for the jury under proper instructions of the court"; and the rule in Security Ins. Co. of New Haven v. Cameron et al., 85 Okla. 171, 205 P. 151, wherein we said in paragraph 4 of the syllabus:

"An insurance company may be held liable in damages to an applicant for insurance where there has been unreasonable delay in perfecting and forwarding an application to the company for acceptance or rejection, by the soliciting agent of the company or other agent who has authority to supervise the solicitation and preparation of applications, and the question of the unreasonableness of the delay is one for the trier of the facts in each particular case under proper instruction of the court."

In support of his position the plaintiff calls our attention to evidence in the record establishing that the custom of the association was to "check" on its agents and the applications procured by them every day, or at least every two days, but that in this instance the agent was not "checked" for some five days, and this belated action was a result of inquiry prompted by the death of applicant's son. The agent's excuse for not reporting the application was that he was suffering from a bad cold or the "flu."

The question of whether the delay was unreasonable was one of fact for determination in the trial court. Like other decisions upon questions of fact in actions at law, it is not to be disturbed in this court

on appeal if supported by competent evidence. The evidence above outlined sufficiently supports the decision of the trial court.

The defendant seeks to avoid the application of the rule announced in Great Northern Life Insurance Company v. Scott, supra, and other cases therein cited on the theory that "it is not an insurance company." This position is not tenable. The provision of burial benefits is a form of insurance and in this jurisdiction burial associations are classified as insurance companies. Southwestern Burial Association v. State ex rel. Reed, Ins. Com'r, 135 Okla. 151, 274 P. 642; State ex rel. Read, Ins. Com'r, v. Midwest Mutual Burial Association, Inc., 176 Okla. 468, 56 P.2d 124. They are by legislative grace exempted from compliance with and the application of the general statutory provisions relating to insurance companies. Section 10453, O. S. 1931, chapter 33, S. L. 1929. They are not, however, by such legislative act deprived of their character as insurance companies and are subject to constitutional provisions relating to such companies. State ex rel. Read, Ins. Com'r, v. Midwest Mutual Burial Association, Inc., supra. The duty of an insurance company to pass on applications without unreasonable delay does not arise from any specific statute defining the same, and thus the fact that burial associations are granted special privileges under our law in the matter of nonobservance of general statutes does not lessen their legal obligation to act with reasonable promptness in passing on applications, especially where, as in this case, the application was accompanied with payment of the initial fee. Security Insurance Co. of New Haven v. Cameron, supra.

The defendant in the trial of this cause asserted as an additional defense that when notified of the death of plaintiff's son it stood ready and willing to furnish the burial service through the Hunter Funeral Home, but that it could not procure the body from the other funeral home to which it had been taken without payment of services rendered at that home.

The evidence discloses that the body was by mistake and without direction of the applicant taken to another funeral home. As to whether the association or the Hunter Funeral Home promptly offered to take care of the same when it was notified, there is a distinct dispute in the evidence. According to the applicant's testimony, the association first denied liability and the offer to take care of the burial service occurred as an afterthought the next day and after the body had been allowed to remain at the other funeral home during the night. By reason of this conflict in the evidence, we deem it unnecessary to consider such legal questions as might have been appropriate for decision had the defendant's evidence upon the point been uncontradicted, as, for instance, the asserted right of an undertaker to a lien on a corpse, and which of the parties to this litigation should suffer from the wrongful assertion of such a lien, if such a lien does not exist.

In support of the judgment it will be presumed that the association denied liability in the first instance and its inability to procure the body at a later date was due to its own delay in expressing a willingness to take care of it.

The defendant also seeks to escape liability in part on the theory that the charge made by the other undertaker was partly taken care of by third parties, namely, the county and an oil man. The position is not tenable. The responsibility of the defendant association was to furnish burial service of the value of $100. The fact that compensation was received from a collateral source, that is, that some other person, natural or corporate, may have, through charitable motives pending default of performance by the association, done that which the association was legally obligated to do, does not militate against its legal responsibility. As stated in 8 R. C. L. page 554:

"As a general rule partial compensation received from a collateral source wholly independent of the wrongdoer cannot operate to lessen the damages recoverable from the latter."

See, also, 8 R. C. L. page 555, paragraph 106.

The defendant also asserts the insufficiency of plaintiff's petition to specifically allege facts constituting his cause of action and, in particular, to plead the existence of a legal duty. There is no merit in this contention in view of the fact that this case originated in the justice court. In Holden v. Lynn, 30 Okla. 663, 120 P. 246, we said:

"Very liberal rules of construction should be applied to pleadings in a justice of the peace court, and technical objections will not be allowed to reverse a judgment, where it is apparent from an examination of the entire record that no substantial right of the party raising the objection could have been affected by the ruling, and where a reversal on that ground would tend to defeat the ends of justice."

To the same effect see Kennedy v. Goodman, 39 Okla. 470, 135 P. 936; Garvin v. Harrell, 27 Okla. 373, 113 P. 186; Whitcomb v. Oller, 41 Okla. 331, 137 P. 709; Incorporated Town of Idabel v. Harrison, 42 Okla. 469, 141 P. 1110; Rogers v. Hall, 46 Okla. 773, 149 P. 878; Ranson v. Capron Hdw. Co., 56 Okla. 278, 155 P. 1166.

This liberal rule of pleading is applicable when a justice of the peace case is tried de novo in a court of record. (Cases cited supra.)

The decision of the trial court is affirmed.

WELCH, V. C. J., and CORN, GIBSON, and HURST, JJ., concur. BAYLESS, C. J., and RILEY, OSBORN, and DANNER, JJ., absent.