## ST. PAUL FIRE & MARINE INS. CO. v. CREACH.

No. 32883.   Nov. 10, 1947.

*186 P. 2d 641.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for plaintiff in error.

J. Scott Vincent, of Cheyenne, and Arney & Barker, of Clinton, for defendant in error.

ARNOLD, J. Plaintiff commenced this action against the defendant in the district court of Roger Mills county to recover damages for alleged negligence and carelessness of defendant and its local soliciting agent, J. D. Webb, resulting in unreasonable delay in acting upon plaintiff's application for insurance and the consequent loss to plaintiff by reason thereof. The pleadings of the parties were appropriate to this character of claim and defense made.

The primary and uncontested facts out of which this case arose are these: Early in the year 1943 plaintiff purchased a farm near the town of Hammon in Roger Mills county consisting of 160 acres with improvements thereon. Plaintiff executed a mortgage thereon to the Commissioners of the Land Office of the State of Oklahoma for the sum of $2,500, in which mortgage was a provision requiring plaintiff to keep the buildings on the farm insured. Early in March plaintiff contacted Webb, the local soliciting agent at Hammon for the defendant corporation, and on the 19th day of March the agent visited the premises of plaintiff, took measurements of the dwelling house and inspected its condition as an insurance risk, had plaintiff sign an application in blank for $1,000 insurance on the dwelling house and returned to his office in Hammon where the application was completed by filling in the blanks. At the time of signing the application plaintiff paid the agent $10.80 to cover the first year's premium on the policy applied for and executed and delivered to him an installment note payable in four annual installments to complete the total premium on a five year policy. The next day, March 20th, the agent forwarded plaintiff's application, together with the draft for the cash premium and the installment note, to the home office of the company at St. Paul, Minn. No policy was ever issued on this application nor was the cash payment and installment note returned to plaintiff until after the destruction of his dwelling house by fire on June 19, 1943.

The variant contentions of the parties in the trial, and here, arise out of certain secondary facts developed by the evi-

dence. It was and is the theory of plaintiff that the receipt by defendant of his application, together with the cash premium and the installment note, established legal relations between the parties by reason of which defendant assumed an implied obligation and duty toward the plaintiff to act upon his application without unnecessary delay and that by reason of the carelessness and negligence of defendant and its agent, Webb, this obligation and duty were not performed by reason whereof plaintiff suffered the loss of his dwelling house. On the other hand, defendant denies that it owed to plaintiff any obligation or duty by reason of his making application to it for insurance and denies that there was any carelessness or negligence on the part of the defendant or its agent which resulted in detriment to the plaintiff; that plaintiff's own negligence and lack of diligence in failing to make inquiry of defendant's agent as to the result of his application was responsible for the loss and failure to procure other insurance.

The parties will be herein referred to as plaintiff and defendant as they appeared in the trial court.

Defendant contends that the trial court erred in overruling its demurrer to plaintiff's evidence and in overruling its motion for a directed verdict.

Plaintiff testified that he heard nothing from his application for about a month at which time he met the agent Webb on the street in Hammon and was advised that the company desired additional coverage before issuing the policy. In reference to this conversation with defendant's agent, his testimony is as follows:

"Q. Now, Andy, when is the next that you heard or knew about this application for insurance? A. Well, it was about, I couldn't tell you the exact date. It was about a month when Mr. Webb came to me on the street and told me that St. Paul wanted a little more additional property on it, and it was in front of the bank and I said, 'Jack, go put the barn in, and anything to fix it up. I want insurance, my loan requires insurance', and he said, 'I will take care of you, Andy', and I said, 'O.K. Jack, thank you', and he went ahead and that is about the deal. Q. Was that the whole substance of your conversation there at that time? A. Yes, sir. Q. He told you then that he would take care of you? A. Yes. Q. And you told him to include the barn or anything it took to make it satisfactory? A. When he told me they needed some additional property, I said, 'Take the barn or anything to fix it up'."

Plaintiff further testified that after this conversation with the agent they met several times in the town of Hammon, but the agent gave him no further information in regard to the matter and he supposed that it was fixed up; that he was never advised that there would be any additional cost for the insurance and that the agent never offered at any time to return his cash payment and premium note until after June 19, 1943, the date of the fire which destroyed his dwelling; that he never expected to receive the policy, but on the contrary thought it would be sent to the Land Office; that after the fire he went to Mr. Webb's office for the purpose of reporting the loss to him; that Webb admitted to him on this occasion that he did not fix his application up and return it to the company as he had promised to do.

We think that with the close of plaintiff's testimony there was a sufficient prima facie showing of carelessness and negligence on the part of defendant's agent and of unnecessary delay on the part of the defendant in rejecting plaintiff's application to present an issue of fact which defendant was required to meet by evidence and that the action of the trial court in overruling the demurrer to plaintiff's evidence was not erroneous.

Webb, the only witness for the defendant, testified that he sent the application to the company immediately after its execution; that he received it

back from the company in about ten days with instructions to get more property on the application; that he received the cash premium paid and the installment note about April 21st; that he told the plaintiff about the return of the application and the demand of the company as to additional coverage; that he returned the application, cash and installment note to plaintiff after the fire had occurred; that plaintiff did not authorize him to include other property in the application, but plaintiff stated they would fix the application up later; that plaintiff never did communicate with him further with reference to the making of another application; that he didn't know whether he ever told the plaintiff that the company had returned his note and application; that the company gave temporary coverage as they always do under such circumstances.

Defendant's theory of the case and its defense is that the receipt by defendant of the application for insurance imposed on it no obligation or duty to accept the same and that since no policy was ever issued on the application there is no liability either in contract or in tort. In support of this contention defendant relied on the case of Moon v. Central States Fire Ins. Co. (Kan.) 23 P. 2d 444. It is true that in that case the Supreme Court of Kansas held that the making of an application to and its receipt by the company imposed no obligation or duty upon the company to accept the application and that since no contractual relation existed, no liability in damages existed in favor of plaintiff for unreasonable delay by the company in rejecting the application. However, the reason upon which the Kansas court based its conclusion that no obligation or duty rested upon the company by reason of its receipt of the application for insurance is disclosed by the last sentence in the opinion which reads:

"There was nothing to return as there would have been if all or part of the premium had been paid in cash."

This leaves room for the assumption that if the application in that case had been accompanied by all or part of the premium, a duty or obligation would have rested upon the company to act without any unnecessary delay.

It will be noted in the instant case that the agent testified that the company "bound" the application and that it actually gave him coverage for a limited number of days. By his use of the word "bound" it is evident that the witness was referring to what is known in law as a "binder" which effectuates temporary insurance pending investigation and issuance of a policy. (29 Am. Jurs. §143.) Therefore, it is evident that on March 31st, when the company returned the application to Webb for the purpose of having additional property included therein, it had not rejected the application. As to what occurred between plaintiff and the agent with reference to this inclusion of additional property in the application, their testimony is in conflict and this conflict was a matter within the province of the jury to resolve. No reason is disclosed by the record, if any existed, why additional property could not be inserted in the original application and the plaintiff testified positively that he authorized the inclusion therein of the barn or any of the property necessary to satisfy the company.

The plaintiff, in support of his contention that the receipt by the defendant of his application for insurance, accompanied by a cash payment of the first year's premium and an installment note covering the balance thereof, established contractual relations between them and that thereby the company assumed an implied obligation and duty of acting without unreasonable delay upon his application, and if same should be rejected that the cash premium and installment note would be promptly returned to him, relies upon the case of Security Insurance Co. of New Haven, Conn., v. Cameron, 85 Okla. 171, 205

P. 151. The rule announced in the Cameron Case has been somewhat modified and limited by the later decisions of this court in Columbian National Life Ins. Co. v. Lemmons, 96 Okla. 228, 222 P. 255, and Travelers Ins. Co. v. Taliaferro, 176 Okla. 242, 54 P. 2d 1069. The rule as now settled by these decisions is thus stated in the third and fourth paragraphs of the Taliaferro Case:

"The duty of an insurance company to act with reasonable diligence upon an application for insurance arises only out of contractual relationship existing between the applicant and the company."

"Where an insurance company receives an application for insurance, together with the premium thereon, an implied promise is thereby created on the part of the company to act upon said application within a reasonable time, and the company may be held liable in damages for breach of such implied promise, or the applicant may waive the contract and sue in tort for negligence on the part of the company in its failure to act within a reasonable time."

See, also, Great Northern Life Ins. Co. v. Scott, 181 Okla. 179, 72 P. 2d 790; Capitol Hill Burial Ass'n v. Oliver, 185 Okla. 261, 91 P. 2d 673; Brown v. Missouri State Life Ins. Co., 124 Okla. 155, 254 P. 7.

That it was the duty of the defendant, upon rejection of plaintiff's application on April 21, 1943, which is conceded for the sake of argument, to return the cash premium and installment note to the plaintiff, is a simple act of right and justice. This defendant failed to do, as shown by the positive testimony of plaintiff which is practically conceded by Webb, the agent, and conceded by the company in its brief, through the lack of diligence or carelessness of its agent who retained both the cash premium and installment note until after plaintiff had sustained his loss. Upon the conflicting evidence produced and under instructions of the court, to which no objection is here raised, the jury found that there had been carelessness and negligence by the defendant through its agent which resulted in unreasonable delay in rejecting plaintiff's application. We think there is ample evidence in the record, together with the reasonable inferences to be drawn therefrom, to sustain the finding of the jury.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, CORN, GIBSON, and LUTTRELL, JJ., concur.