REPUBLIC NATIONAL LIFE INSURANCE COMPANY, a Corporation of Dallas, Texas, Plaintiff in Error,

v.

Wana CHILCOAT, Individually, and as Executrix of the Estate of Fred C. Chilcoat, Deceased, Defendant in Error.

No. 38794.

Supreme Court of Oklahoma.

Oct. 24, 1961.

Rehearing Denied Feb. 20, 1962.

Wayne B. Snow, of Savage, Gibson, Benefield & Shelton, Oklahoma City, for plaintiff in error.

Hal S. Whitten, Joe W. Whitten, Oklahoma City, for defendant in error.

IRWIN, Justice.

Plaintiff is the widow of Fred C. Chilcoat, deceased, and executrix of decedent's last will and testament, and she brought an action for damages allegedly occasioned by the negligence, want of ordinary care and diligence on the part of the defendant in passing upon decedent's application for a $10,000 life insurance policy. Trial was had to a jury resulting in a verdict and judgment in favor of the plaintiff against Republic National Life Insurance Company. After motion for new trial was overruled, Republic Life Insurance Company appeals. The parties will be referred to by their trial court designation.

Plaintiff alleged that Dick Mourning is an agent and representative of defendant and in April or May 1956, he solicited decedent to purchase an insurance policy on his life in the sum of $10,000; that Mourning prepared an application which was signed by decedent and a check in the sum of $129.67 was issued by decedent to defendant covering the first quarterly premium on the policy to be issued, and for which a receipt was issued by Mourning. That Fred C. Chilcoat died June 4, 1956.

Plaintiff further alleged that the defendant acted in a negligent careless and dilatory manner in that the policy of insurance was not delivered and defendant did not notify deceased of any rejection thereof; that it was the duty of defendant to act on the application within a reasonable time and that it failed, refused and neglected to act with diligence and within a reasonable time; that as the result of the negligence on the part of the defendant, plaintiff has been damaged in the sum of $10,000; that after death of Fred C. Chilcoat, defendant notified plaintiff it would not deliver the policy of insurance, and would not pay the $10,000.

The defendant's answer consisted of a general denial; admitted Mourning is soliciting agent for it but denied he was a general or policy writing agent and spe-

cifically denied failing to act on the application with diligence or within a reasonable time; that the application was handled in the normal and usual course of procedure in processing an application and applicant died while the application was under review in its underwriting department, and that plaintiff is not entitled to recover.

■ Defendant first contends the tort theory for negligent delay in acting upon an application for life insurance is not available in this action to the plaintiff. In this connection defendant agrees with the defense counsel in North American Accident Ins. Co. v. Ralls, Okl., 288 P.2d 1097, 1100, wherein it is stated:

"* * * Defense counsel says that analysis of the latter case shows that 'the negligent delay theory' is limited to those classes of cases where there is a previous understanding that the application is to be binding unless there is notice of rejection. * * *"

In the Ralls case, we assumed, without deciding the truth of the above statement. However, in the "latter case" referred to, being Security Insurance Co. of New Haven, Conn., v. Cameron, 85 Okl. 171, 205 P. 151, 159, 27 A.L.R. 444, we said:

"* * * It strikes us as manifestly unfair to hold a stipulation in an application for insurance that the company is not bound until the application is received and approved, as warranting an insurance company to delay consummating a contract of insurance for an unreasonable length of time, and then in the event of loss repudiate it. It is in just such situations as this that the insured is allowed, in the event of loss, to recover damage for negligence based upon unreasonable delay. The doctrine is laid down in paragraph 46, pp. 54, 55, 26 C.J., and reads as follows: * * *.

* * * * * *

"In their contention that there was no contract of insurance completed the insurer is probably correct, but for them to take the position that they owed these plaintiffs, the insured, no legal duty to furnish or refuse to furnish this insurance with promptness is to take a position that law, justice or equity does not support."

And we held:

"* * * An insurance company, having solicited and obtained applications for insurance, and having received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon or suffer the consequences flowing from their neglect so to do."

In St. Paul Fire & Marine Insurance Co. v. Creach, 199 Okl. 372, 186 P.2d 641, we said the rule announced in the Cameron case has been somewhat modified and limited by Columbian National Life Insurance Co. v. Lemmons, 96 Okl. 228, 222 P. 255, and Travelers Ins. Co. v. Taliaferro, 176 Okl. 242, 54 P.2d 1069, and the rule is now settled by these decisions.

In the Columbian National Life Insurance Co. case, Lula Lee Lemmons, deceased, who died May 24th, who solicited for insurance on May the 4th or the 5th. She signed the application and paid the premiums and the receipt given to her stated that "such insurance to be in force from the date of this receipt, provided the application therefore be approved by the company * * * and a policy issued on the plan applied for, the company reserving the right to disapprove, reject or postpone such application, and, unless the policy is actually issued, incurring no liability hereunder, except for the return of any moneys paid hereon, if the application be not accepted." [96 Okl. 228, 222 P. 256.] The application was never accepted by the company and no policy issued. In affirming judgment for plaintiff, who was the administrator of the estate of deceased who was the applicant for the insurance policy, we said:

"It is to be observed that no contention is made that the delay of the defendant in passing on the application is to be construed as an acceptance of the application by the insurer, and neither is the action based on a contract of insurance, for no policy was issued. The action is based on the alleged negligence of the defendant in failing to pass upon said application for insurance within a reasonable time after it was received by the company, and after the payment of the first premium."

And we held:

"Insurance companies are held, in law, to a broader legal responsibility than are parties to purely private contracts or transactions. This is based upon the fact that those companies act under franchise from the state, and the policy of the state in granting such franchise proceeds upon the theory that it is in the interest of the public to the end that indemnity upon specific contingencies should be provided those who are eligible and those who desire it, and for their protection the state regulates, inspects, and supervises their business. An insurance company, having solicited and obtained an application for insurance, and having received payment of the fees or premiums exacted, is bound to act upon said application within a reasonable time, or suffer the consequences caused by its neglect so to do."

"An insurance company may be held liable in damages to an applicant for insurance, where there has been unreasonable delay in acting upon her application for insurance, and the question of unreasonableness of the delay is a question of fact for the jury under proper instructions of the court."

In the Travelers Insurance Co. case, supra, we held:

"Where an insurance company receives an application for insurance, together with the premium thereon, an implied promise is thereby created on the part of the company to act upon said application within a reasonable time, and the company may be held liable in damages for breach of such implied promise, or the applicant may waive the contract and sue in tort for negligence on the part of the company in its failure to act within a reasonable time." [176 Okl. 242, 54 P.2d 1069.]

In that case the Insurance Company was not liable for the reason no contractual relationship existed as the premiums were not paid, and the court said being, "ready, able, and willing to pay the premium is not sufficient to constitute consideration for a promise to act diligently upon the application."

In Brown v. Missouri State Life Ins. Co., 124 Okl. 155, 254 P. 7, 8, we said:

"It is well settled in this jurisdiction that damages may be recovered when an insurance company negligently or unreasonably delays in acting or passing upon an application for insurance; and in such case it is for the jury to determine whether the delay was negligent or unreasonable. Columbian National Life Ins. Co. v. Lemmons, Adm'r, 96 Okl. 228, 222 P. 255; Security Ins. Co. [of New Haven, Conn.] v. Cameron, 85 Okl. 171, 205 P. 151, 27 A.L.R. 444; Duffy v. Bankers' Life Ins. Co. 160 Iowa 19, 139 N.W. 1087, 46 L.R.A. (N.S.) 25."

In the instant action the premium was paid and an implied promise was created on the part of the defendant to act upon the application within a reasonable time. Applying the rule of law announced in the above-cited cases to the facts in the case at bar, we hold the tort theory for negligent delay in acting upon an application for life insurance is available to the plaintiff and the question of unreasonableness of the delay is a question for the jury under proper instructions.

■■■ Defendant's contentions that (a) there is no evidence to support the finding that defendant did not act within a reasonable time as would enable it to act in-

telligently and advisedly upon the application; and (b) the trial court erred in failing to allow defendant's underwriter to testify as to his opinion as to whether he could or could not have acted advisedly and intelligently upon the application prior to the time in which he did, will be considered together.

As we have heretofore stated, an insurance company may be liable where there is an unreasonable delay in acting upon an application for insurance and the question of unreasonableness of delay is a question for the jury. Therefore, even though it would require special skill and knowledge beyond that of persons with common experience to determine whether the defendant, acting through its underwriter, could or could not have acted advisedly and intelligently upon the application, the trial court did not commit error in excluding such testimony. The determination to be made by the jury was not whether the underwriter could or could not have acted advisedly and intelligently, but whether or not there had been an unreasonable delay in acting upon the application which would necessarily include the question as to whether or not there had been an unreasonable delay in processing the application and compiling the necessary information for the underwriter to act advisedly and intelligently.

In this connection, the date the application was filed and sent to the home office was in evidence, and the underwriter outlined the procedure followed in the home office upon receipt of an application and detailed the steps taken before the application and related instruments were submitted to the underwriting department. These facts created a question for the jury as to what was or was not an unreasonable delay in processing the application and getting the necessary information in order for the underwriter to act advisedly and intelligently. Therefore, the trial court did not err in excluding the testimony of the underwriter as to whether he could or could not have acted advisedly and intelligently on the application prior to the time in which he did.

We will now consider whether or not there was an unreasonable delay in acting upon the application for insurance. In considering this issue we must be mindful of the established principle of law where a cause is submitted to a jury upon instructions fairly stating the applicable law and there is competent evidence reasonably tending to sustain the verdict, this Court will not review the evidence to determine the weight thereof and substitute its judgment for the judgment rendered on the verdict.

The evidence discloses that decedent made application for a $10,000 life insurance policy on May 22, 1956. On that date he was given a physical examination and delivered to defendant's agent a check in favor of defendant for $129.67 for the premium. The decedent was issued a receipt and on May 30, 1956, defendant deposited the check and the same was charged to decedent's account on May 31, 1956. On May 25, 1956, defendant was rechecked for blood pressure and another urine specimen taken by defendant's doctor who gave decedent the first examination. On June 4, 1956, decedent died as a result of a cerebral hemorrhage or stroke.

Defendant's home office is in Dallas, Texas, and the application for the policy, the check for the premium, the physical examination report and the urine specimen was received in the home office on Monday, May 28, 1956. The complete file was given to the underwriter on May 30, and on May 31, the underwriter wrote to decedent's family doctor for additional medical information. The decedent received no information or correspondence from the defendant relating to the disposition of his application after he made his application on May 22, and paid the premium thereon, other than a recheck of his blood pressure was made and another urine specimen taken on May 25th. Also decedent's bank statement reflected the defendant had deposited his check for the premium paid and his account had been charged with such payment.

It is not for this court to weigh the evidence and determine in what manner the

defendant may or may not have unreasonably delayed acting upon the application from the time the application was made and premium paid to the time of decedent's death, but determine if there is any competent evidence reasonably tending to support the verdict and judgment rendered thereon. We have examined the evidence and find there is competent evidence reasonably tending to support the verdict and judgment rendered thereon.

Defendant's contention that the trial court erred in permitting evidence as to whether decedent was or was not a diabetic can not be sustained. In the opening statement made in behalf of defendant, the decedent's physical condition was attacked and his insurability questioned and reference was made to a letter written to decedent's family doctor by the defendant requesting information as to the decedent being a diabetic. Under ordinary procedure, this testimony may not have been admissible; however, the seed that decedent was a diabetic and was not insurable at the time he made application for the policy had already been planted in the minds of the jurors on behalf of the defendant and plaintiff was entitled to refute the same. Where one invites or participates in the injection of evidence which may be incompetent, he can not be heard to complain that evidence relating to the same subject matter is submitted. See Oklahoma Ry. Co. v. State, 205 Okl. 325, 237 P.2d 878; Doggett v. Doggett, 85 Okl. 90, 203 P. 223; and St. Louis-San Francisco Ry. Co. v. King, Okl., 278 P.2d 845.

Complaint is made that certain instructions were repetitious. While there is some repetition in both of the instructions complained of, we have held that, ordinarily, repetition in instructions, of itself, is not reversible error unless it clearly appears to have misled the jury. McCasland v. Burton, Okl., 292 P.2d 396; Thompson v. Galion Iron Works & Mfg. Co., 201 Okl. 182, 203 P.2d 438. We have carefully examined the instructions and we are unable to find anything to indicate the giving of them, in any manner confused or misled the jury, or was prejudicial to the defendant.

The cancelled check given by applicant in payment of the premium was introduced and received in evidence. At the same time a "blown up" photostatic copy of the check was also received in evidence over the objection of the defendant, which defendant contends was error. At the time the objection was made the attorney for the plaintiff stated, "That is so they can be easier read, if the court please, and make it simpler for the jury." There was no contention the enlargement was inaccurate but the objection was on the ground the original was already admitted in evidence. The face of the check was perfectly clear and legible but the stamps of the different banks and the stamps of the defendant were superimposed, one upon the other, making the date the check was deposited and the date it was paid by the Oklahoma City Bank and charged to decedent's account very hard to determine. During the testimony whenever a question was asked as to the date of depositing or the date of payment, each witness, including those of the defendant, referred to the "blown up" copy.

We are cited to no case based on facts comparable to the admission of this "blown up" check exhibit, but we do find expressions of this court, under different facts, which shed light on the admissibility of such evidence. In the case of Thomas v. State ex rel. Com'rs of Land Office, 197 Okl. 450, 172 P.2d 973, 974, we held:

> "The admission of photographs in evidence is a matter within the discretion of the trial court, and when duly verified, they are admissible in evidence as aids to the jury in arriving at an understanding of the evidence."

And in the body of the opinion we said:

> " * * * The authorities cited by defendants in support of their contention that this was erroneous are among the earlier holdings of the courts on this subject. Since that time the matter of admitting photographic evidence has become widespread and the courts

have very generally changed their rulings thereon. It is now usually recognized that photographic evidence, even composite photographs for comparison purposes, are admissible in evidence where the authenticity and scientific accuracy are reasonably accounted for. * * *"

In this connection see, also, Hisaw v. Atchison, T. & S. F. Ry. Co., 197 Okl. 228, 169 P.2d 281; Schaff v. Coyle, 121 Okl. 228, 249 P. 947; and Missouri, K & T Ry. Co. v. Smith, 97 Okl. 152, 223 P. 373.

The California case of Sim v. Weeks, 7 Cal.App.2d 28, 45 P.2d 350, 356, best illustrates the reasoning as to why the "blown up" check was admissible in evidence where that court quoted from 22 C.J., page 918 as follows:

"* * * It is no objection to the admissibility of a photograph that it is enlarged, showing the subject or object magnified, where this does not have a tendency to mislead. Photographs of instruments already in evidence which are so enlarged as to make the proportions plainer and to illustrate the testimony of the witnesses may go to the jury in the same way as would a magnifying glass or microscope. * * *".

To the same effect also see Latham v. Houston Land & Trust Company, Tex.Civ.App., 62 S.W.2d 519.

We therefore hold that since the endorsements and stamps on the original check were blurred to the extent they were hard to read and decipher, it was not error on the part of the trial court to admit in evidence as an aid to the trial court or jury, a "blown up" copy thereof which made the material portion legible and easily discernible.

The last contention of the defendant is that the court erred in not declaring a mistrial because of improper remarks of the attorney for the plaintiff in his closing argument. The objection of the defendant to the remarks was promptly sustained by the court when called to his attention and the jury instructed not to consider such remarks in considering their verdict and struck the remark from the record. In order for alleged misconduct of counsel in argument to the jury to effect a reversal of a judgment it must appear that substantial prejudice resulted therefrom and that the jury was influenced thereby to the material detriment of the party complaining. See Juckes v. Rogers, 206 Okl. 663, 246 P. 2d 335. It does not appear that substantial prejudice resulted from the remarks or that the jury was influenced thereby to the material detriment of the defendant.

Judgment affirmed.

WILLIAMS, C. J., and BERRY, J., concur.

DAVISON and JACKSON, JJ., concur specially.

BLACKBIRD, V. C. J., concur in results.

WELCH, HALLEY and JOHNSON, JJ., dissent.

JACKSON, Justice (concurring specially).

I am able to concur in this case because of the testimony of Mr. Colen E. McRae, Jr., who identified himself as Assistant Vice President of defendant company, in charge of Agency Underwriting.

This witness testified with commendable candor that the Chilcoat file was delivered to him on May 30, 1956. That he reviewed the entire file, including Dr. Moore's examination, the urinalysis report and inspection report, and further testified as follows:

"Q. What were your conclusions from an underwriting standpoint. A. In reviewing Dr. Moore's examination, I found that the pulse rate was rather high, and I found that the blood pressure was high. I found that Dr. Moore, in making his examination of the urine, found a large amount of sugar. I also found that the applicant was crippled

to some extent and I believe Dr. Moore expresses here that he used crutches, I believe, or cane—crutches, he said, in walking, two crutches. Of course the sugar finding here—now, our laboratory—the doctor examines the specimen and so does our laboratory. We have two checks on that. The laboratory did not find the sugar, and so the question in my mind was whether this man was a diabetic. If he was, he would not qualify for life insurance at all. But his blood pressure and his pulse and the fact that he used crutches, made him rather highly substandard. * * *.

"Q. Now, what do you mean by the fact that you found him to be highly substandard? A. It means that he could not qualify for a standard life insurance policy. In other words, at the regular published rates in the rate book carried by our salesmen. * * *

"Q. What else did you do with this file? A. Well, we try to give insurance to *everbody* we can on some basis, even substandard, if we can, and so I passed the case to our medical director, who is a doctor. * * *

"Q. And what was your purpose in referring this case to the medical director. * * * A. I wanted the doctor's opinion as to whether—as to how much importance he attached to the sugar finding, because if he felt the man was not a diabetic we could offer him a substandard rate; * * *."

It is apparent from the foregoing that the Chilcoat application for insurance was rejected on May 30, 1956. Any further investigations made or attempted after that date were not for the purpose of determining whether the application for insurance would be accepted or rejected, but for the purpose of determining whether the company would offer Chilcoat a "substandard rate" or a less favorable insurance contract.

In view of the fact that the application was rejected on May 30, 1956, it seems to

me that this supports the view that the company was negligent in failing to notify Chilcoat of that fact within a reasonable time after intelligently and advisedly rejecting the application. These facts tend to minimize the prejudicial effect of the alleged errors set forth and discussed in the majority opinion.

I am authorized to state that DAVISON, J., concurs in the views expressed herein.